**Thomas ENGLERT d/b/a Northeast Electrical Inspection Agency, Appellant,**

v.

**CITY OF McKEESPORT and Middle Department Inspection Agency, Appellees.**

**No. 83–5507.**

United States Court of Appeals, Third Circuit.

Argued March 5, 1984.

Decided June · 11, 1984.

James P. Hollihan (Argued), Manion, Alder & Cohen, P.C., Pittsburgh, Pa., for appellant.

Michael J. Boyle (Argued), William G. Boyle, Meyer, Unkovic & Scott, Pittsburgh, Pa., for Middle Dept. Inspection Agency.

John F. Cambest (Argued), Conway, Meyer & Cambest, Pittsburgh, Pa., for City of McKeesport.

Before HUNTER and BECKER, Circuit Judges, and HOFFMAN,* District Judge.

### OPINION OF THE COURT

JAMES HUNTER III, Circuit Judge:

This appeal arises from an order of the district court, 564 F.Supp. 375, dismissing an antitrust action for lack of subject matter jurisdiction. Plaintiff, Thomas Englert ("Englert"), brought this suit against the City of McKeesport ("McKeesport") and Middle Department Inspection Agency ("Middle Department"), alleging, *inter alia*, violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2 (1982).

---

* Honorable Walter E. Hoffman, United States District Judge for the Eastern District of Virginia, sitting by designation.

The United States District Court for the Western District of Pennsylvania granted defendants' motions to dismiss for lack of subject matter jurisdiction, relying on the analysis outlined in *Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Center*, 552 F.Supp. 1170 (E.D.Pa.1982). *Cardio-Medical* has since been reversed by this court, 721 F.2d 68 (3d Cir.1983). In accordance with our reasoning in that case, we will reverse the present case and remand to the district court.

## I.

Thomas Englert is the proprietor of Northeast Electrical Inspection Agency ("Northeast Electrical"), engaged in the business of inspecting electrical work on public and private construction projects in western Pennsylvania.[1] Englert inspects the completed work to ensure compliance with the National Electrical Code and local building and electrical codes. Englert's inspection fee is paid by the electrical contractor, but the ultimate cost is generally borne by the owner of the building as part of the total cost of the building or project.

Defendant Middle Department is a rival electrical inspection agency, also doing business in the western Pennsylvania area. On May 5, 1982, the City Council of McKeesport passed a resolution granting Middle Department the exclusive right to perform electrical inspections within the city. As a result of this exclusive arrangement, Northeast Electrical is foreclosed from inspecting electrical work in McKeesport.

Englert brought this action against Middle Department and McKeesport, alleging that their exclusive arrangement constituted a restraint of trade, monopolization, and attempted monopolization in violation of the Sherman Act, 15 U.S.C. §§ 1 & 2 (1982). Englert also brought a claim for violation of his rights under the fourteenth amendment, along with various pendent state claims. In this appeal we need only consider the Sherman Act claims.[2]

Rather than answering Englert's complaint, each defendant moved immediately for dismissal of the claims against it. Both alleged failure to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6); Middle Department additionally challenged the district court's jurisdiction over the subject matter of the claims, Fed.R.Civ.P. 12(b)(1), alleging an insufficient nexus with interstate commerce.

Englert amended his complaint in response to the jurisdictional challenge, incorporating a number of allegations designed to make out the requisite effect on interstate commerce. In particular, Englert alleged that much of the labor, material and other services involved in building construction in western Pennsylvania and McKeesport is supplied from out of state; that many of the electrical and general contractors and owners who paid the electrical inspection fees were from outside Pennsylvania; and that many of the projects inspected were financed with funds from the federal Department of Housing and Urban Development.

Defendants persisted in their motions to dismiss. On June 7, 1983, the district court granted the motions and dismissed Englert's suit for want of federal jurisdiction. Relying on the district court's analysis in *Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Center*, 552 F.Supp. 1170 (E.D.Pa.1982), the court below ruled that Englert's jurisdictional allegations were

---

1. The facts we outline here are drawn almost entirely from the allegations of Englert's complaint. This appeal arises from a Rule 12(b) motion to dismiss. The defendants have not filed answers to Englert's complaint, and have made no attempt to controvert Englert's factual allegations. For purposes of this appeal, we must take these allegations to be true. *See Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

2. The lower court's dismissal of Englert's federal constitutional claims has not been appealed to this court. Englert's pendent state claims were dismissed along with the federal claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The lower court on remand should reconsider its dismissal of the state claims in light of our reinstatement of Englert's Sherman Act claims.

not sufficient to establish a substantial and adverse impact on interstate commerce. This appeal arises from that dismissal.

## II.

The district court in *Cardio-Medical* held that a mere "shifting" of interstate commerce from one entity to another, without a net change in the amount of commerce flowing across state lines, is not sufficient to engage the jurisdiction of the federal courts. 552 F.Supp. at 1178.[3] The district court in the present case similarly ruled that the defendants' behavior, which allegedly shifted inspection work away from Englert and to Middle Department, did not have the "substantial and adverse effect" on interstate commerce required under *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976).

Since the date of the order and opinion below, this court has reversed the district court in *Cardio-Medical* and held that allegations of "shifting," standing alone, are in fact sufficient to satisfy the Sherman Act's jurisdictional requirement. 721 F.2d at 72–74.

It is clear to us, in light of *Cardio-Medical's* reading of the "substantial and adverse effect" requirement, that the district court erred in dismissing Englert's Sherman Act claims for want of subject matter jurisdiction. Taken as true, as they must be, Englert's allegations are sufficient to withstand a Rule 12(b)(1) motion. Englert has alleged that the fee charged for electrical inspections is in many cases paid by out-of-state electrical and general contractors.[4]

 The payment of fees for professional services is certainly "commerce" within the meaning of the antitrust laws. *See Goldfarb v. Virginia State Bar*, 421

U.S. 773, 783–86, 95 S.Ct. 2004, 2011–2012, 44 L.Ed.2d 572 (1975). Under the rule in our *Cardio-Medical* opinion, the allegation that defendants' arrangement has shifted this interstate flow of fees to Middle Department and away from Northeast Electrical and other inspection agencies, sufficiently alleges a substantial and adverse effect on interstate commerce. We hold that Englert has satisfied the Sherman Act's jurisdictional requirement.

Indeed, counsel for defendants conceded at oral argument that, in light of *Cardio-Medical*, Englert's complaint is adequate to withstand challenge under Rule 12(b)(1). Noting, however, that an effect on interstate commerce is an element both of the jurisdictional standard and the substantive offense, *see Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 890–91 (3d Cir.1977), defendants point out that their motions to the court below also challenged the sufficiency of Englert's allegations of interstate effect under Rule 12(b)(6). *Cardio-Medical* dealt with a Rule 12(b)(1) challenge; defendants now urge us to limit that case to Rule 12(b)(1) motions, and to hold that Rule 12(b)(6) requires a greater impact on interstate commerce than is required by Rule 12(b)(1). More specifically, defendants are asking us to hold that while "shifting" impacts interstate commerce sufficiently to confer subject matter jurisdiction, it is not sufficient to satisfy the interstate component of the substantive claim.

We find no merit to this position. The Supreme Court in *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), squarely held that challenges to the sufficiency of the effect on interstate commerce under Rule 12(b)(1) require no different analysis than challenges under Rule 12(b)(6). "In

---

3. For an enlightening critique of the district court's reasoning in *Cardio-Medical, see* Note, *Sherman Act "Jurisdiction" in Hospital Staff Exclusion Cases,* 132 U.Pa.L.Rev. 121 (1983).

4. Englert has also alleged that many construction projects requiring electrical inspection are financed with federal funds, and that federal

funds pay the inspection fee in these cases. These other allegations also would be sufficient to meet the jurisdictional requirement of §§ 1 and 2 of the Sherman Act. *See McLain v. Real Estate Bd. of New Orleans, Inc.,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980).

either event, the critical inquiry is into the adequacy of the nexus between respondents' conduct and interstate commerce that is alleged in the complaint." *Id.* at 742 n. 1, 96 S.Ct. at 1851 n. 1. Consequently, we reject defendants' contention that a greater effect on interstate commerce is required to overcome a substantive challenge under Rule 12(b)(6) than a jurisdictional challenge under Rule 12(b)(1).

### III.

Accordingly, we will reverse the order of the district court dismissing Englert's action for want of federal jurisdiction, and remand for proceedings consistent with this opinion.