Thomas ENGLERT, d/b/a Northeast
Electrical Inspection
Agency, Plaintiff,

v.

CITY OF McKEESPORT and Middle
Department Inspection Agency,
Inc., Defendants.

Civ. A. No. 83-653.

United States District Court,
W.D. Pennsylvania.

June 18, 1986.

See also, D.C., 640 F.Supp. 1329.

James P. Hollihan, Pittsburgh, Pa., for plaintiff.

Michael. J. Boyle, Pittsburgh, Pa., for Middle Dept. Inspection Agency, Inc.

John F. Cambest, Pittsburgh, Pa., for City of McKeesport.

## OPINION

GERALD J. WEBER, District Judge.

This antitrust action alleges that an exclusive arrangement between the City of McKeesport and the Middle Department Inspection Agency (hereinafter "Middle Department") for performance of electrical inspections within the city violates *inter alia* § 1 and § 2 of the Sherman Act.[1] The action is currently before us on Motions for Judgment on the Pleadings as to Counts I and II (The Sherman Act claims) brought by both defendants. Plaintiff has responded in opposition to defendants' motions, and the issues have been briefed by the parties.

Because defendants have moved for judgment on the pleadings,[2] we take as true the allegations of plaintiff's amended complaint. *Bryson v. Brand Insulation, Inc.*, 621 F.2d 556 (3d Cir.1980). We also draw all inferences to the benefit of plaintiff and against the moving parties. *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884 (3d Cir.1977).

In relevant part, the Amended Complaint indicates that on May 5, 1982, the City of McKeesport enacted a resolution by which city officials were authorized and directed to enter into an agreement with Middle Department, a private party which is independant of the city, whereby Middle Department would perform all electrical inspections work for the City of McKeesport.[3] Plaintiff alleges that, pursuant to this resolution, Middle Department and McKeesport entered into an agreement whereby Middle Department was granted the exclusive right to perform all electrical

inspections on electrical work done within the city. Plaintiff, a competing electrical inspector, claims that the resolution and agreement violate the antitrust laws.

## STATE ACTION IMMUNITY

The City of McKeesport moves for judgment on the pleadings claiming that its actions as alleged by the plaintiff are immune from antitrust liability since the resolution in question was passed pursuant to a clearly articulated and affirmatively expressed state policy. McKeesport thus alleges that its conduct falls within the "state action" exemption set forth in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The motion of Middle Department also relies in part on this affirmative defense. We do not agree that defendants have satisfied the requirements necessary for their conduct to be considered immune from antitrust scrutiny as "state action". Accordingly, we will deny defendants' motions based on the following reasoning.

The scope of "state action" immunity as it pertains to activities undertaken by cities and/or by private parties has recently been clarified by the Supreme Court. To qualify as "state action", anticompetitive activities *by a municipality* must have been undertaken pursuant to a clearly expressed state policy. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). A city need not demonstrate that the state "compelled" it to act, to satisfy this "clear articulation" requirement. Rather it is suffi-

1. Other claims which are not addressed in these motions allege violations of the 14th Amendment and pendant state claims of unfair competition, business disparagement and slander per se, as well as violations of the Pennsylvania constitution.

2. Defendants have provided with their briefs matters outside the pleadings as exhibits. Plaintiff has also attached evidentiary materials to its complaint. Under these circumstances, we would normally treat these motions as summary judgment motions under F.R.Civ.P. 56. However, in this case, a period of discovery which was directed exclusively to the question

of state action exemption was limited by this court on defendants' representation that no discovery was necessary for plaintiff to respond in opposition to its motion for judgment on the pleadings. *See* Plaintiff's Motion to Compel Discovery; Defendant's Response thereto, and this Court's Orders dated 8/9/84 and 11/1/84.

3. The Middle Department Inspection Agency is a private enterprise sponsored by the insurance industry. It is used by insurance companies, public utilities and municipalities for inspection services.

cient for a city to show that the state specifically authorized its cities to provide certain services, and that the state has delegated to the cities the express authority to take action that *foreseeably will result in anticompetitive effects. Town of Hallie,* ——, 105 S.Ct. at 1718–20. Since the city is a public body exposed to public scrutiny, it is presumed to act in the public interest. For this reason, the Supreme Court decided that in order for a city to claim immunity for its own anticompetitive activities, the *only* requirement it must satisfy is the "clear articulation" test, *Hallie,* at ——, 105 S.Ct. at 1720–21.

■ This is not the case when the activities being scrutinized are those of a private party such as Middle Department. In that instance, in addition to satisfying the "clear articulation" requirement, the private party must also show that it satisfies a second requirement referred to as "active state supervision." *See California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); *Southern Motor Carriers Rate Conference, Inc., et al. v. U.S.,* 471 U.S. 48, 105 S.Ct. 1721, 1730–31, 85 L.Ed.2d 36 (1985). Since the activities complained of in this action were not solely undertaken by the city, but also involve a delegation of authority to a private party, it will be necessary for us to examine whether both the "clear articulation" requirement and the "active state supervision" requirement have been satisfied.

In attempting to establish that McKeesport's actions were taken pursuant to a "clearly articulated and affirmatively expressed state policy," McKeesport relies primarily on statutory provisions of the Pennsylvania Third Class City Code, 53 Pa. Stat.Ann. § 35101, *et seq.*, specifically § 39132. Since McKeesport is a third class city which has adopted a home rule form of government, the city is governed by these provisions of general law, *see* 53 P.S. § 1–401, unless it adopts alternate provisions of its own. In this case, § 39132 would apply to McKeesport, and it reads as follows:

Council may appoint building inspectors, housing inspectors, fire prevention inspectors, *electrical inspectors* and plumbing inspectors and *fix their compensation.* Such inspectors shall have the right to enter upon and inspect any and all premises at all reasonable hours for the administration and enforcement of the building ordinances, the housing ordinance, the fire prevention ordinance, the electrical ordinance and plumbing ordinance. *Any fees payable to them under* the building ordinance, the housing ordinance, the fire prevention ordinance, *the electrical ordinance* and the plumbing ordinance *shall be paid by them to the city treasurer for the use of the City* as promptly as may be. (emphasis added)

■ We have no doubt that this statute provides a "clearly articulated" state policy authorizing the city to provide electrical inspection services which could foreseeably result in anticompetitive effects. Had the city itself hired persons to do electrical inspection work and had it set any reasonable fee for the provision of such services, our inquiry would end here with a finding of "state action" immunity for the city. Instead the city decided to delegate the function of electrical inspection to a private party.

Plaintiff claims that this delegation by the city is not within the contemplation of the statute, if for no other reason than the fact that the statute specifically contemplates that fees for electrical inspection services would be set by the city and not by a private party placed in the position of exercising monopoly power. Both McKeesport and Middle Department have admitted that McKeesport exercises no control over the amount of the fee charged by Middle Department for its electrical inspection services. *See* Answer of Middle Department ¶ 8; Answer of McKeesport ¶ 8.

■ In examining the statute, we agree that the legislative grant of authority under 53 P.S. § 39132 includes a provision that the city may "fix the compensation." Whether or not this section of the statute

was intended to operate as a limitation on the city's ability to delegate the provision of this service to a private party, as plaintiff argues, need not be decided by us at this time. The fact remains that Middle Department's activities must be shown to have "adequate state supervision" by McKeesport in order to fall within the protection of "state action" immunity. *See Southern Motor Carriers Rate Conference*, 471 U.S. at ——, 105 S.Ct. at 1726–27. We accept defendants' evidentiary materials which tend to show McKeesport does exercise control over standards and practices employed by Middle Department in conducting its electrical inspections.[4] However, we agree that the admission of defendants that McKeesport maintains no control over Middle Department's fees is sufficient as a matter of law to preclude a finding of state action immunity since there is not "adequate state supervision" over fee-setting. *See California Retail Liquor Dealers Asso. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980).[5]

## ANTITRUST INJURY

While we agree that the allegations of unsupervised fee-setting standing alone, are sufficient under the circumstances to preclude this court from granting defendant's motion based on a claim of "state action" immunity, we question whether in view of these limited allegations, plaintiff will be able to sustain its continuing burden of showing antitrust injury.

Section 4 of the Clayton Act grants standing to sue for treble damages to "any person ... injured in his business or property by reason of anything forbidden in the antitrust laws ..."

Federal courts have used various tests to assist them in defining who may sue and for what type of antitrust injury. *See, e.g. Loeb v. Eastman Kodak Co.*, 183 F. 704 (3d Cir.1910) (adopting "direct injury" test); *Conference of Studio Unions v. Loew's Inc.*, 193 F.2d 51, 54–55 (9th Cir.1951), *cert. denied* 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952) (employing the "target area" approach); *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1151–1152 (6th Cir. 1975) (asking whether the injury is "arguably within the zone of interests protected by the antitrust laws"). Recently the Supreme Court reviewed these tests and decided that selection of a precise black-letter rule to be applied in each case was virtually impossible. *Associated General Contractors of CA, Inc. v. California State Council of Contractors, et al.*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Each case is to be analyzed individually.

It is clear, however that the Supreme Court supports the lower courts' efforts to limit standing based on § 4 of the Clayton

---

**4.** In support of their assertion that McKeesport exercises control over standards, methods and/or practices employed by Middle Department in conducting its electrical inspections, defendants have submitted copies of various ordinances by which McKeesport has adopted and amended its building and electrical standards/codes, showing that the city has adopted the National Electrical Code. Other exhibits include copies of various filing cards which are systematically maintained at the City Clerk's Office. These cards record electrical inspections as they are performed, giving information as to date and place. Through this system the city is made aware of various construction projects within its limits and of the performance of the requisite inspection thereon. Plaintiff does not dispute the existence of the electrical ordinances and other procedures.

**5.** In *Midcal,* a California state statute permitted or authorized price setting by wine producers,

and enforced the prices so established, but the state did not in any way regulate or review the reasonableness of the price schedules. Therefore, no state action immunity was found. Defendant attempts to distinguish *Midcal* from our case indicating that the particular service involved herein is a traditional, governmental function designed to protect public health and safety. *See Town of Hallie v. City of Eau Claire,* 700 F.2d 376 (7th Cir.1983) (Appellate Court held that "active state supervision" prong of *Midcal* test for exempting private conduct need not be met because the city was engaging in a traditional local government function.) We reject this distinction, noting that the Supreme Court did not rely on this reasoning but distinguished solely between municipal conduct and that of private parties. *Town of Hallie,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24; *Southern Motor Carriers,* 471 U.S. 48, 105 S.Ct. 1721.

Act. *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). Two cases dealing with standing requirements are brought to mind readily by the facts in this case.

One is the "hearing aid" case, *Reiter v. Sonotone Corp.*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979), in which the Supreme Court decided that a purchaser of a hearing aid had standing to sue since a direct purchaser was injured in his "property" by virtue of price-fixing. If Englert lived in McKeesport, he might assert a similar sort of injury as a consumer of the inspection services, i.e., he might allege that the failure to supervise the fee-setting caused him, as a consumer, injury in the way of higher prices. However, we note that the Amended Complaint alleges that Englert resides in North Huntingdon rather than in the City of McKeesport and therefore he could not have suffered "consumer" injury.

The other case which seems most analogous to this one is the "bowling alley" case, *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977). This case arose when Brunswick Corp., by far the largest operator of bowling centers and one of the two largest manufacturers of bowling equipment in the United States, acquired competing bowling centers that had defaulted in payments for bowling equipment that they had purchased from Brunswick. Other bowling centers sued Brunswick alleging that the acquisitions might substantially lessen competition or tend to create a monopoly. At trial, the suing bowling centers showed that they had lost profits which they would otherwise have gained had the defaulting bowling centers been allowed to close by Brunswick. The Supreme Court decided that while the suing bowling centers' loss occurred "by reason of" the unlawful acquisitions, it did not occur "by reason of" that which made the acquisitions unlawful, since they would have suffered this loss regardless of who bought the competing bowling centers.

The antitrust violations were not the cause in fact of the injuries; competition and not lack of competition was the cause in fact. Thus the court held plaintiffs were not entitled to damages under § 4.

In the case at hand, plaintiff's injuries appear to flow not from the allegations of unsupervised fee-setting which we have preliminarily found to be improper, but from the exclusive arrangement between the City and Middle Department which would otherwise fall under state action immunity from antitrust scrutiny. Englert's injuries do not appear to give him standing to sue for treble damages.

Since this issue was only indirectly raised by defendant's motion and not fully briefed by the parties, we will not determine it herein but raise it to alert the parties to address the court's concerns in this area.

## NOERR–PENNINGTON DOCTRINE

■ Middle Department argues alternatively that its actions are exempt under the Noerr-Pennington Doctrine. Under this doctrine, attempts to influence public officials or to obtain government action are exempt from the Sherman Act, regardless of intent or purpose. *See Eastern Railroad President's Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Thus Middle Department's alleged efforts to influence McKeesport into passing ordinances would be exempt.[6] However, these are not the only allegations made. Plaintiff points out that Noerr-Pennington does not apply where a governmental entity has been named as a co-conspirator with a private party trying to influence it, where no state action exemption exists, relying on *Duke & Co., Inc. v. Foerster*, 521 F.2d 1277 (3d Cir.1975). Since we cannot say that plaintiff "can prove no set of facts in support of his claim which would entitle him to relief", we will not dismiss plaintiff's claims against Middle Department on this

**6.** *See* Amended Complaint, ¶ 18(a) and (b).

basis. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## LOCAL GOVERNMENT ANTITRUST ACT

 Defendant Middle Department also raises the enactment of Local Government Antitrust Act of 1984, P.L. 98–544, 53 U.S.L.W. 47 (Oct. 24, 1984) as an alternate ground for granting pretrial relief. However, Section 3(b) of the Act limits its application. This case was commenced prior to the effective date of the Act, and there has already been an appeal taken from a prior decision of this court. Defendant faces a heavy burden, in light of these circumstances, in attempting to establish that it would be "inequitable" not to apply the Act. We believe that the equities do not favor the application of this Act to limit plaintiff's claim for relief in this case.

An appropriate order will issue.