Thomas **ENGLERT** d/b/a Northeast Electrical Inspection Agency, Plaintiff,

v.

**CITY OF McKEESPORT and Middle Department Inspection Agency Inc., Defendants.**

Civ. A. No. 83–653.

United States District Court, W.D. Pennsylvania.

Nov. 3, 1988.

James P. Hollihan, Manion McDonough & Lucas, Pittsburgh, Pa., for plaintiff.

P. Christian Hague, Meyer Unkovic & Scott, Pittsburgh, Pa., for Middle Dept. Inspection Agency.

John F. Cambest, Meyer & Cambest, Pittsburgh, Pa., for City of McKeesport.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiff filed this antitrust action, alleging that the City of McKeesport and the Middle Department Inspection Agency (MDIA) acted in concert to enact a city ordinance which made MDIA the exclusive electrical inspector in the City of McKeesport. After several previous skirmishes resulting in reported Opinions,[1] we now consider plaintiff's motion for partial summary judgment and defendants' cross motions for summary judgment. All parties have filed briefs and extensive evidentiary materials, and the motions are ripe for disposition.

## FACTS

MDIA performs electrical inspections on construction jobs to ensure that the work is done to code specifications. Often such an inspection is a prerequisite to issuance of an Occupancy Permit.

Plaintiff was an electrical inspector employed by MDIA until August 27, 1981 when MDIA fired him after learning that he was considering starting a competing electrical inspection business. Freed of his worker's shackles, plaintiff founded Northeast Electrical Inspection Agency and began competing with MDIA for business.

Plaintiff appears to have had some initial success, at least in McKeesport. During his first 8 months in business plaintiff earned fees of $2,539 from projects in McKeesport where MDIA earned $3,714 over the same period.

On May 5, 1982, the City of McKeesport passed an ordinance which made MDIA the City's exclusive electrical inspector. No Occupancy Permit would issue unless MDIA had performed the electrical inspection. The City asserts that it passed the ordinance in an effort to tighten up its enforcement of its building codes, because MDIA was uniquely well-qualified and reliable, and because MDIA's record keeping was efficient and beneficial to the City.

The new ordinance significantly impaired plaintiff's business in McKeesport. If a project required a City Occupancy Permit, the Contractor could not employ plaintiff's firm because the City would only issue the permit upon receipt of an MDIA report. Therefore, plaintiff could only perform inspections on jobs that did not require Occupancy Permits, precluding plaintiff from a large segment of the work available in McKeesport.

Plaintiff filed this suit alleging violations of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, and asserting other subsidiary claims. Defendants both assert various grounds for summary judgment. For the reasons stated we conclude that plaintiff cannot produce sufficient evidence of "concerted activity" or willful conduct by MDIA to sustain his antitrust claims and summary judgment is therefore appropriate.

## DISCUSSION

■ Plaintiff's claims under Sections 1 and 2 of the Sherman Antitrust Act are

1. *Englert v. City of McKeesport,* 564 F.Supp. 375 (W.D.Pa.1983); rev'd 736 F.2d 96 (3d Cir.1984); on remand, 637 F.Supp. 930 and 640 F.Supp. 1329 (1986).

both dependent on the assertion that MDIA participated in the passage of the ordinance at issue. Under Section 1, plaintiff must establish a "contract, combination ... or conspiracy." 15 U.S.C. § 1. In short, concerted activity. Under Section 2, plaintiff must establish not only that MDIA had a monopoly position, but that its acquisition of that position was willful. *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Wilfullness requires some element of bad or anticompetitive conduct. E.g., *Weiss v. York Hospital*, 745 F.2d 786, 828 n. 73 (3d Cir.1984); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 273–275 (2d Cir.1979).

▓▓▓ To sustain either or both of his claims then, plaintiff must establish that MDIA participated in some way with McKeesport to accomplish its monopoly status. If McKeesport acted alone and MDIA acquiesced, plaintiff's claims fail because independent action, even though it creates an exclusive arrangement, is not prohibited. A party has the right to deal or refuse to deal with whomever it likes, as long as it does so independently. *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). As that Court recited, in the context of a distributor termination:

> There must be evidence that tends to exclude the possibility that the manufacturer and non-terminated distributors were acting independently. As Judge Aldisert has written, the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'

465 U.S. at 764, 104 S.Ct. at 1471, quoting *Edward J. Sweeney & Sons, Inc. v. Texaco*, 637 F.2d 105, 111 (3d Cir.1980).

Reviewing the evidence of record in this light, we find little evidence, either direct or circumstantial, which even arguably supports a finding of concerted activity. Pressed to identify its evidence on this issue plaintiff recites the following:

a) MDIA provided information to McKeesport prior to passage of the ordinance.

b) A representative of MDIA attended the council meeting at which the ordinance was passed, and he sat with the City's electrician.

c) The City advised contractors of the need to hire MDIA under the new ordinance.

d) MDIA accepted and performed all work requested of it.

None of these facts, either alone or in concert, tends to support plaintiff's allegation of concerted activity. We can dispose quickly of the last 2 facts because they occurred after the fact and are perfectly consistent with innocent, independent action by the City. If the City had independently passed this ordinance as defendants claim, it would have had to advise contractors of the change, just as it did here, and MDIA would certainly have been justified in accepting all the benefits of this independent action. Thus c) and d) listed above do not tend to disprove independent action.

The same can be said of the fact that an MDIA representative attended the City Council meeting. Is there anything unusual in MDIA's having a representative at a public meeting concerning legislation affecting the company? Or in having that person sit next to the City employee who routinely deals with electrical inspectors? These facts are perfectly consistent with independent action by the City and they do not tend to preclude the possibility of independent action.

Finally, plaintiff makes much of the fact that MDIA provided information to the City at the City's request prior to passage of the ordinance. Courts have recognized that the mere fact that defendants have communicated prior to accomplishment of the exclusive arrangement is not alone sufficient evidence of concerted activity. E.g., *Monsanto*, 465 U.S. 752, 104 S.Ct. 1464; *Sweeney & Sons, Inc.*, 637 F.2d 105. The City and electrical inspectors in the course of their dealings have a legitimate interest in the free exchange of information. *Monsanto*, 465 U.S. at 763–764, 104 S.Ct. at

1470. In *Monsanto,* complaints by distributors to a supplier who later acted to the benefit of the complaining distributors would not support an antitrust violation without more.

 Plaintiff also points to the chronology of events. Plaintiff was fired by MDIA on August 27, 1981. He immediately started his own business and competed successfully against MDIA in McKeesport until the City passed the subject ordinance on May 5, 1982.

Standing alone this chronology does no more than allow a jury to speculate on MDIA's role. In considering this evidence as well as the facts described above, we are mindful of the Third Circuit's direction in *Sweeney & Sons, Inc.:*

> Direct proof of an express agreement is not required. On the contrary, the plaintiff may rely on an inference of a common understanding drawn from circumstantial evidence; 'The picture of conspiracy as a meeting by twilight of a trio of sinister persons with pointed hats close together belongs to a darker age.' ... Nevertheless, appellants had the burden of adducing sufficient evidence from which the jury could find illegal concerted action on the basis of reasonable inferences and not mere speculation. (citations omitted).

637 F.2d at 111. Our review of the evidence of record, particularly in light of *Monsanto* and *Sweeney & Sons,* requires us to conclude that plaintiff is unable to adduce sufficient relevant facts to support a finding of concerted activity or willful acquisition of a monopoly. For the reasons stated, summary judgment in favor of defendants on plaintiff's claims under Sections 1 and 2 of the Sherman Act will be granted.

The only other remaining claim is one asserted under the Pennsylvania Constitution. Defendants have sought summary judgment on this claim on various grounds and plaintiff has not opposed it. Therefore summary judgment will be granted to defendants and that claim will be dismissed with prejudice.