Thomas **ENGLERT** d/b/a Northeast Electrical Inspection Agency, Appellant,

v.

**CITY OF McKEESPORT**

and

**Middle Department Inspection Agency.**

No. 88–3773.

United States Court of Appeals, Third Circuit.

Argued March 15, 1989.

Decided April 20, 1989.

James P. Hollihan (argued), Manion McDonough & Lucas, P.C., Pittsburgh, Pa., for appellant.

John F. Cambest (argued), Dattilo, Barry, Fasulo & Cambest, Pittsburgh, Pa., for appellee, City of McKeesport.

P. Christian Hague (argued), Michael J. Boyle, and Ronald D. Morelli, Meyer, Unkovic & Scott, Pittsburgh, Pa., for appellee, Middle Dept. Inspection Agency.

Before MANSMANN, GREENBERG and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Thomas Englert, doing business as Northeast Electrical Inspection Agency, brought this action against the City of McKeesport, Pennsylvania, and the Middle Department Inspection Agency (MDIA), a private contractor, under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, and under the Pennsylvania Constitution as a pendent claim. The district court granted summary judgment on the Sherman Act claims and dismissed the pendent Pennsylvania constitutional claim with prejudice by an opinion and order of November 3, 1988.

Inasmuch as we conclude that Englert did not and cannot prove concerted action between the defendants, an essential element of his Sherman Act claims, we will affirm the granting of the summary judgment. We will, however, vacate the judgment to the extent it dismissed the pendent state constitutional claim with prejudice and we will remand the matter for entry of an order dismissing that claim without prejudice.

## I. BACKGROUND

Notwithstanding the extended length of this litigation, the facts, insofar as material to this appeal, are neither complicated nor in dispute. MDIA has for some time been engaged in the business of providing electrical inspections in McKeesport and elsewhere. McKeesport requires such inspections on much of the electrical work within the city and unless it has the inspection results will not issue an occupancy permit where one is required.

Englert was an electrical inspector employed by MDIA until August 27, 1981, when he was fired.[1] *See Englert v. City of McKeesport*, 698 F.Supp. 99, 100 (W.D.Pa. 1988). In September, 1981, Englert founded Northeast Electrical Inspection Agency and began to compete with MDIA for business in Western Pennsylvania. When Englert went into business, persons needing electrical inspections were free to select an electrical inspector of their choice in McKeesport. Englert was initially successful in McKeesport as he received fees of $2,539 there during his first eight months of business while MDIA received fees of $3,714 in McKeesport over the same period. *See id.*

Shortly after Englert went into business, McKeesport contemplated making MDIA its exclusive inspector. Accordingly, Robert Jaworski, the city electrician, met with Theodore E. Javorsky, the MDIA inspector assigned to the geographic area encompassing McKeesport, and told him of McKeesport's plans and asked for an explanation of how MDIA functioned. Javorsky testified that this was the only exchange he had with McKeesport officials concerning MDIA becoming McKeesport's exclusive inspector. Javorsky testified, however, that Jaworski contacted him and asked him to attend a meeting of the city council on May 5, 1982, at which the council would consider making MDIA the city's exclusive inspector and he did so. He further testified that he sat with Jaworski at the meeting but was asked no questions.

At the meeting, the city council enacted a resolution[2] designating MDIA as the only entity authorized to perform electrical inspections in the city. The district court found, and it is undisputed, that thereafter McKeesport would not issue an occupancy permit unless MDIA had performed the electrical inspection. *See Englert*, 698 F.Supp. at 100. The resolution stated:

> WHEREAS, the City of McKeesport, under its broad police powers may designate an individual or firm as its electrical inspector to ensure that all electrical work performed in the City of McKeesport is done pursuant to federal, state and local regulations; and

> . . . . .

> NOW, THEREFORE, BE IT RESOLVED, by the City of McKeesport, in Council Assembled ... That the proper City Officials be and are hereby authorized and directed to enter into an agreement with Middle Department Inspection Agency to provide for all electrical inspections for all electrical work done within the City of McKeesport.

McKeesport asserts that it enacted the resolution "in an effort to tighten up its enforcement of its building codes," *Englert*, 698 F.Supp. at 100, selecting MDIA because it "was uniquely well-qualified and reliable, and because MDIA's record keeping was efficient and beneficial to the City." *Id.*

Englert argues that McKeesport's selection of MDIA failed to include any procedural safeguards. Specifically, he argues in his brief:

> [A]fter consultation with McKeesport fire chief Robert Matwick and City electrician Robert Jaworski, a decision was made by this affiant to propose a Resolution concerning the appointment of Middle department as electrical inspector for the City of McKeesport. This resolution was written without consultation or input from Middle Department Inspection Agency.

---

1. It appears that he was fired because he was going to form his own business but it also appears that MDIA was not satisfied with his work.

2. The affidavit of McKeesport Mayor Louis Washowich states that the resolution was prepared without input from MDIA.

At no time prior to the passage of the May 5, 1982 resolution did McKeesport consider any other entities for inspection work, nor did McKeesport publicly advertise the intent to enact the May 5, 1982 resolution or otherwise publicly notify competitor companies about the availability of the exclusive right to perform electrical inspection work in McKeesport.

Englert set forth in his complaint that pursuant to this resolution "the City ... did, in fact, enter into an agreement with [MDIA], the essential terms of which are that [MDIA] is granted the exclusive right to perform all electrical inspections on electrical work done within the City of McKeesport." The district court found that the resolution significantly impaired Englert's business in McKeesport but that he was still free to perform some inspections. "If a project required a City Occupancy Permit, the Contractor could not employ plaintiff's firm because the City would only issue the permit upon receipt of an MDIA report. Therefore, plaintiff could only perform inspections on jobs that did not require Occupancy Permits, precluding plaintiff from a large segment of the work available in McKeesport." *Englert*, 698 F.Supp. at 100. Consequently, Englert had only $1,981 of business in McKeesport from May of 1982, through November, 1986, while MDIA collected $40,147 in fees for inspections in McKeesport over the same period.[3]

After complaining unsuccessfully to McKeesport about the May 5, 1982, resolution, Englert brought this action on March 18, 1983, in a six count complaint. Count I stated an action for unlawful restraint of trade under section 1 of the Sherman Act. Count II set forth that the exclusive arrangement violated section 2 of the Sherman Act. Count III alleged that MDIA had been engaged in various activities including misrepresentation for a period of several years with the specific intent to obtain a monopoly in western Pennsylvania

in violation of section 2 of the Sherman Act. Count IV stated a cause of action for state law unfair competition, commercial disparagement and slander *per se*. Count V asserted that the alleged agreement between MDIA and McKeesport violated the Fourteenth Amendment protections of due process, privileges and immunities, and equal protection. Count VI asserted that the alleged exclusive agreement violated provisions of the Pennsylvania Constitution.

McKeesport and MDIA filed motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted under Fed.R. Civ.P. 12(b)(1) and 12(b)(6). Each motion included several grounds for relief and both asserted that the complaint insufficiently alleged a nexus with interstate commerce as required for an action under the Sherman Act. In response, Englert filed an amended complaint containing specific allegations with regard to the impact of the alleged McKeesport–MDIA agreement on interstate commerce. Thereafter, the defendants' motions were renewed.

The district court granted the motions to dismiss, *see Englert v. City of McKeesport*, 564 F.Supp. 375 (W.D.Pa.1983), explaining that Englert's amended complaint failed adequately to allege the substantial and adverse impact on interstate commerce prerequisite to the applicability of the Sherman Act and to the court's jurisdiction. *See id.* at 376. In addition, the opinion summarily rejected each of the federal constitutional claims. *See id.* at 377. The court further concluded that, inasmuch as no federal claims remained, it would not exercise pendent jurisdiction over the state law claims. *See id.*

We reversed and remanded. *See Englert v. City of McKeesport*, 736 F.2d 96 (3d Cir.1984). In our opinion we addressed only the dismissal of the Sherman Act claims,[4] although we indicated that the dis-

---

**3.** In addition to asserting that the resolution in general caused him to lose business Englert asserts that he lost a specific contract already awarded him.

**4.** As we explained, the rationale for reversing the dismissal of the Sherman Act claims was that the district court relied upon *Cardio–Medical Assoc's, Ltd. v. Crozer–Chester Medical Center*, 552 F.Supp. 1170 (E.D.Pa.1982), which we

trict court should reconsider the dismissal of the state law claims on remand. *See id.* at 97 n. 2. We stated that the "dismissal of Eglert's federal constitutional claims [count V] has not been appealed." *Id.*

On remand, the defendants filed answers to the amended complaint admitting the content of the May 5, 1982, resolution, but denying that the resolution was the result of any improper activity between them and further denying that they had executed any agreement pursuant to the resolution. They also claimed that inasmuch as Englert had not appealed the dismissal of his federal constitutional claims they were not properly before the court. They asserted that the state action exemption from liability under Sections 1 and 2 of the Sherman Act applied in this case.

Thereafter, MDIA moved for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) on counts I and II of the amended complaint. This motion asserted that "Pennsylvania law authorizes the appointment of an electrical inspector by a municipality such as the City of McKeesport," and that McKeesport was immune from antitrust liability under the state action doctrine. In the alternative, MDIA argued that even if the resolution was enacted pursuant to an agreement it had with McKeesport, such conduct would be immune from antitrust liability under the *Noerr–Pennington* doctrine.[5] McKeesport also filed a Rule 12(c) motion for dismissal of counts I and II arguing that it was immune from liability under the state action doctrine.

On June 18, 1986, the district court denied the Rule 12(c) motions, *see Englert v. City of McKeesport,* 637 F.Supp. 930 (W.D. Pa.1986), in an opinion which addressed only counts I and II of the amended com-

plaint—the Sherman Act claims.[6] The court rejected the defendants' contention that they were immune under the state action doctrine, *see id.* at 931, the *Noerr–Pennington* doctrine, *see id.* at 934–35, or the Local Government Antitrust Act of 1984, Pub.L. No. 98–544, 98 Stat. 2750, which was enacted at about the time that the motions for the judgments on the pleadings were being filed and was not mentioned in the motions by the defendants but was apparently raised later. *See Englert,* 637 F.Supp. at 935. But the court questioned whether Englert would be able to demonstrate an antitrust injury within the scope of his pleadings; that is, whether Englert had standing. *See id.* at 933–34. The court's standing concerns caused the defendants to make supplemental motions for judgments on the pleadings which were denied. *See Englert v. City of McKeesport,* 640 F.Supp. 1329 (W.D.Pa.1986).

After this final Rule 12(c) ruling, discovery progressed. On January 5, 1987, Englert filed a motion to amend his complaint so as to dismiss counts III and IV, and on January 21, 1987, the district court filed an order dismissing them with prejudice.

After discovery, the defendants filed motions for summary judgment. MDIA asserted that there was insufficient evidence to create a genuine issue of fact with regard both to Englert's assertion that MDIA and McKeesport had entered into an agreement subsequent to the May 5, 1982, resolution and his assertion that MDIA had initiated or induced McKeesport's enactment of the resolution. MDIA also argued that count V was not properly before the court inasmuch as Englert had not appealed from the order that had dismissed it.[7]

---

reversed, 721 F.2d 68 (3d Cir.1983), after the district court had ruled on the motions to dismiss, *see Englert,* 736 F.2d at 97.

**5.** *See Eastern Railroad President's Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

**6.** Consequently, the district court did not address the defendants' contention that the federal constitutional claims had been waived.

**7.** MDIA also reasserted defenses under the *Noerr–Pennington* doctrine and the state action doctrine. MDIA contended that discovery had failed to support Englert's assertion that MDIA's alleged conduct had a substantial adverse effect upon interstate commerce and that, consequently, no cause of action could be proven under either section 1 or 2 of the Sherman Act. MDIA

And, inasmuch as MDIA moved for summary judgment on all of the other counts, it maintained that the pendent state law claims should be dismissed for lack of jurisdiction. McKeesport's motion for summary judgment merely incorporated MDIA's motion by reference, though it also included an affidavit of the mayor of McKeesport as additional evidence.

Englert filed a cross-motion for partial summary judgment on liability under counts I and II, asserting in his accompanying memorandum that there were no disputed issues of material fact. In his memorandum he conceded that "if the Court grants defendant's [sic] motion for summary judgment on the Sherman Act claims and dismisses those claims ... it would probably be inappropriate to proceed with federal adjudication of the pendent state claims."

In an opinion and order dated November 3, 1988, and filed on November 4, 1988, the district court granted summary judgment for the defendants on counts I and II.[8] *See Englert,* 698 F.Supp. 99. The court premised this result on its conclusion "that plaintiff cannot produce sufficient evidence of 'concerted activity' or willful conduct by MDIA to sustain his antitrust claims and summary judgment is therefore appropriate." *Id.* at 100. In addition, the court addressed the claims under the Pennsylvania constitution in count VI, stating:

> [t]he only other remaining claim is one asserted under the Pennsylvania Constitution. Defendants have sought summary judgment on this claim on various grounds and plaintiff has not opposed it. Therefore summary judgment will be

granted to defendants and that claim will be dismissed with prejudice.

*Id.* Englert filed a timely notice of appeal from this final order.

We have jurisdiction by virtue of 28 U.S.C. § 1291 as an appeal from final judgment. The district court had subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337, and 15 U.S.C. § 4. In reviewing the order for summary judgment our standard of review is plenary. *Metzger by and through Metzger v. Osbeck,* 841 F.2d 518, 519 (3d Cir.1988).

## II. THE SHERMAN ACT CLAIMS

Inasmuch as we find that the district court correctly concluded that Englert was unable to demonstrate the concerted action element of his claims we need not address the affirmative defenses raised in the district court.

Under section 1 of the Sherman Act Englert bears the burden of proof on each of four elements:

> (1) that the defendants contracted, combined or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive affects within the relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiffs were injured as a proximate result of that conspiracy.

*Arnold Pontiac—GMC, Inc. v. General Motors Corp.,* 786 F.2d 564, 572 (3d Cir. 1986); *accord Martin B. Glauser Dodge Co. v. Chrysler,* 570 F.2d 72, 81 (3d Cir. 1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 413 (1978). In his brief,

---

also maintained that the record demonstrated that Englert had received business in McKeesport demonstrating that a monopoly had not been granted to MDIA.

MDIA contended that count VI was not before the court as Englert had not appealed from the dismissal of that count. But it was still viable as we had indicated it should be reconsidered on remand.

**8.** As we have explained count V was dismissed by the district court, *Englert,* 564 F.Supp. 375, when it granted the defendants' original motions to dismiss but the dismissal of this count

was not appealed along with the remainder of that order. Counts III and IV were dismissed by the January 21, 1987, order. Englert conceded in his January 12, 1987, memorandum that count VI, which raised questions of state constitutional law, should be dismissed if counts I and II were dismissed. Thus, counts I, II, and VI were the subject of *Englert,* 698 F.Supp. 99, but the resolution of counts I and II was dispositive of count VI. Inasmuch as only counts I, II, and VI remained for disposition the November 3, 1988 order was final.

Englert concedes that he must prove these elements but maintains that the record contained sufficient evidence of each of them to warrant summary judgment on his behalf so that the defendants should not have been granted summary judgment. The first of these four elements requires some contract, combination, or conspiracy between the defendants and thus Englert was required to produce evidence proving that the resolution making MDIA the exclusive inspector was not simply the product of McKeesport's unilateral action. *See Arnold Pontiac—GMC, Inc.*, 786 F.2d at 572.

Englert's burden was similar under section 2. In this regard it is established that:

> [T]he offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident.

 *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966); *SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1062 (3d Cir.), *cert. denied*, 439 U.S. 838, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). To prove that MDIA has "willfully acquired" monopoly power, Englert's burden under section 2 was essentially the same as under section 1: he was required to prove that McKeesport did not unilaterally decide to grant an exclusive franchise to MDIA, but that MDIA contributed to the passage of the resolution, and thus willfully obtained a monopoly. Englert sets forth in his brief that "MDIA has obtained a monopoly in the McKeesport market for electrical inspection as a result of the McKeesport/MDIA exclusive dealing arrangement and that MDIA is therefore liable for monopolization under Section 2 of the Sherman Act." Thus, Englert appears also to allege the existence of a combination or conspiracy to monopolize. While a conspiracy under section 1 differs from one prohibited under section 2, both require concerted action.

The Supreme Court in a section 1 case explained the proof necessary to establish concerted action:

> [t]here must be evidence that tends to exclude the possibility that the [defendants] were acting independently. As Judge Aldisert has written, the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the [defendants] 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'

*Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984) (quoting *Edward J. Sweeney & Sons, Inc. v. Texaco*, 637 F.2d 105, 111 (3d ·Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981)).

At oral argument before this court Englert's attorney conceded that he could not prove that the passage of the May 5, 1982, resolution was the result of concerted action.[9] Nonetheless, he maintained that there was concerted activity demonstrated by MDIA's actions in performing inspections pursuant to the exclusive arrangement resulting from the resolution.[10] It is well settled, however, that a restraint established through unilateral action by the government is not transformed into concerted action merely because the government enforces it. "A restraint imposed unilaterally by government does not become concerted action within the meaning of the [Sherman Act] simply because it has a coercive effect upon parties who must obey the law." *Fisher v. City of Berkeley*, 475 U.S. 260, 267, 106 S.Ct. 1045, 1049–50 (1986). Here, as in *Fisher*, there was "no meeting of the minds." *Id.* at 267, 106 S.Ct. at 1050.

---

**9.** Previously, Englert had conceded as much in his brief: "there is little evidence which would support an inference that defendant MDIA induced the passage of the May 5, 1982 resolution or otherwise participated in the deliberations of McKeesport concerning that resolution."

**10.** This argument was also presented in Englert's brief.

The district court reviewed Englert's presentation on the concerted action issue and stated that the only evidence which "even arguably supports a finding of concerted activity" was that (1) MDIA provided information to McKeesport before the ordinance was passed; (2) a representative of MDIA attended the council meeting at which the ordinance was passed; (3) this representative sat with the city's electrician during this meeting; (4) the city advised contractors of the need to hire MDIA under the new ordinance; and, (5) MDIA accepted and performed all work requested of it. *See Englert,* 698 F.Supp. at 101.

The district court considered and found that the five factors relied upon by Englert did not individually or together establish that the resolution was the product of concerted action between McKeesport and MDIA. The district court discounted the first point:

> [c]ourts have recognized the mere fact that defendants have communicated prior to accomplishment of the exclusive arrangement is not alone sufficient evidence of concerted activity. The City and electrical inspectors in the course of their dealings have a legitimate interest in the free exchange of information.

*Id.* (citations omitted). Both *Monsanto,* 465 U.S. at 762–63, 104 S.Ct. at 1470, and *Sweeney & Sons, Inc.,* 637 F.2d at 110, support this conclusion and the district court properly found that this fact was not probative of concerted activity.

█ The district court also rejected the second and third points:

> [i]s there anything unusual in MDIA's having a representative at a public meeting concerning legislation affecting the company? Or in having that person sit next to the City employee who routinely deals with electrical inspectors? These facts are perfectly consistent with independent action by the City and they do not tend to preclude the possibility of independent action.

*Englert,* 698 F.Supp. at 101. We agree with the district court's analysis; neither of these facts is probative of concerted activity. Finally, the district court rejected the fourth and fifth points inasmuch as they "occurred after the fact and are perfectly consistent with innocent, independent action by the City." *Id.*

█ The crux of Englert's appeal is that the district court did not give adequate weight to these last two factors because the court focused on determining whether there was concerted activity in the passage of the resolution rather than also considering MDIA's performance under the resulting arrangement. Englert insists that the uncontested facts of record demonstrate a conspiracy which *resulted* from the passage of the May 5, 1982, resolution. He argues in his brief that:

> [t]he undisputed facts establish that as a result of the May 5, 1982 resolution, McKeesport vested MDIA with a virtual monopoly for all inspection services performed in McKeesport. The undisputed facts also establish MDIA's participation in this combination or conspiracy, reflected by MDIA's agreement to serve as the exclusive electrical inspector for McKeesport, to perform inspections as needed, and to supply reports of the inspections to McKeesport following the completion of the work by MDIA.
>
> ... At no point did MDIA advise McKeesport that it did not desire to be the exclusive inspector, would not accept that position, or would not otherwise fulfill its role in this combination by performing inspections and performing any other functions required by McKeesport.

Englert also relies on the language of the resolution to suggest that the defendants had entered into an agency relationship or, in the alternative, that they had entered into a contractual arrangement.

We cannot accept Englert's position. The most the proofs established was, as Englert sets forth in his brief, that "MDIA's conduct clearly evidences that it *acquiesced* to McKeesport's exclusive appointment and accepted the position created by the ordinance." Thus, this case does not involve concerted action. What it does involve is the acceptance by MDIA of the unilateral appointment by McKeesport. Furthermore, we cannot understand how

MDIA could have avoided the appointment except by refusing business. We also point out that although Englert asserts that McKeesport officials advised contractors and property owners of the necessity of hiring MDIA for inspection work, Englert does not refer to any instance in which MDIA participated in this activity.[11] This case simply does not involve willful acquisition or maintenance by MDIA of its exclusive position in McKeesport. Quite to the contrary, its position was literally thrust upon it.

In reaching our result, we have not overlooked Englert's argument that the resolution constituted a "hybrid restraint" which *Fisher v. City of Berkeley* recognized could violate section 1. Rather, we do not accept the argument as the record before us does not support this characterization.

*Fisher* stated that "[n]ot all restraints imposed upon private actors by government units necessarily constitute unilateral action outside the purview of § 1. Certain restraints may be characterized as 'hybrid,' in that nonmarket mechanisms merely enforce private marketing decisions." 475 U.S. at 267–68, 106 S.Ct. at 1050. As the Court then noted it had found such hybrid restraints and held them violative of the Sherman Act in *Schwegmann Brothers v. Calvert Distillers Corp.*, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951), and *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980).

In *Schwegmann Brothers* and *Midcal* groups of individuals engaged in concerted activity in which a government actor also joined. *Schwegmann Brothers* involved a price-fixing scheme between interstate distributors of liquors by which retailers signed price-fixing contracts promising not to sell at less than the prices stated in the distributors' schedules. 341 U.S. at 385, 71 S.Ct. at 746. Over one hundred retailers signed such price maintenance contracts. *Id.* This action clearly violated the Sherman Act and the only issue was whether a

Louisiana statute authorizing this practice served to insulate the distributors and retailers from liability. *See id.* at 368, 71 S.Ct. at 746. Thus, even in the absence of the Louisiana statute there was sufficient concerted activity to establish a prima facie violation of the Sherman Act.

*Midcal* presented a similar price-fixing scheme. Wine producers and wholesalers in the State of California cooperated to maintain the price of their products. 445 U.S. at 99–103, 100 S.Ct. at 940–41. Again, the combination or conspiracy was evident even in the absence of state activity to enforce the scheme. The only issue before the Supreme Court was whether California could shield the concerted action from antitrust liability. *See id.* at 99, 100 S.Ct. at 940.

■ These cases merely establish that the status of the one governmental actor will not serve to insulate the concerted activity of others from antitrust liability. Here, however, the only parties are MDIA and McKeesport and thus the only alleged concerted action in this case exists between them. In these circumstances the hybrid restraint analysis is simply not applicable.

At bottom this action is viable under the Sherman Act only if MDIA had a duty to refuse before the May 5, 1982, resolution was adopted to provide information regarding its services to McKeesport or to decline business in McKeesport after it was adopted. We are aware of no interpretation of the Sherman Act imposing such duties. In the circumstances of this case there were no activities indicating unlawful concerted action in violation of the Sherman Act and MDIA did not willfully acquire its position in McKeesport. Consequently, we will affirm the order for summary judgment to the defendants on the Sherman Act claims.

### III. THE PENDENT STATE LAW CLAIMS

■ Englert argues that the district court erroneously concluded that he did not

---

**11.** We do not imply that our result would have been different if MDIA had advised persons needing inspections of its exclusive status.

Rather, we are simply ruling on the basis of the facts in the record.

oppose the dismissal of his state constitutional claims. His brief describes the order of November 3, 1988, as "dismiss[ing] with prejudice [his] claims under the Pennsylvania Constitution, incorrectly concluding that 'plaintiff has not opposed' such dismissal."

Englert maintains that his memorandum "merely agreed that should the District Court grant defendants' motions for summary judgment on the Sherman Act claims, 'it would probably be inappropriate to proceed with federal adjudication of the pendent state claims.'" Thus he argues that the district court, on the basis of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), should have declined to continue to exercise jurisdiction over the pendent claims and it should have then dismissed these claims *without* prejudice. We agree inasmuch as the federal issues were terminated before trial. *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343, ——, 108 S.Ct. 614, 618–19, 98 L.Ed.2d 720 (1988). Thus, we will vacate the district court's order in part and remand this matter for the entry of an order dismissing the state constitutional claims without prejudice.[12]

## IV. CONCLUSION

We will affirm the order of November 3, 1988, granting the defendants summary judgment on counts I and II of the complaint but will vacate the order dismissing count VI of the complaint with prejudice and will remand the matter to the district court for entry of a modified order consistent with this opinion dismissing count VI without prejudice.

---

12. It appears that the pendent claims under count VI were asserted only against McKeesport as Englert in his reply brief in the district court on the summary judgment proceedings said that he "reiterates his earlier statements that he has not asserted any state constitutional claims against MDIA, and agrees that MDIA would not be an appropriate defendant to such claims." We, however, will not dwell on the point as the issue of who would be a proper defendant in the state court is not before us. Rather, that is a matter for the state court. We also note that MDIA raises various defenses regarding the pendent claims but we do not pass on them.