PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 08-1693

———

HOWARD HESS DENTAL LABORATORIES
INCORPORATED and PHILIP GUTTIEREZ
d/b/a DENTURES PLUS,
on behalf of themselves and all others similarly situated,

Appellants

v.

DENTSPLY INTERNATIONAL, INC.

———

No. 08-1694

———

JERSEY DENTAL LABORATORIES,
f/k/a Howard Hess Dental Laboratories Incorporated
and PHILIP GUTTIEREZ, d/b/a Dentures Plus,
on behalf of themselves and all others similarly situated,

Appellants

v.

DENTSPLY INTERNATIONAL, INC.; ACCU BITE, INC.;
ADIUM DENTAL PRODUCTS, INC.;
ARNOLD DENTAL SUPPLY COMPANY;
ATLANTA DENTAL SUPPLY COMPANY;
BENCO DENTAL COMPANY;
BURKHART DENTAL SUPPLY COMPANY;
DARBY DENTAL LABORATORY SUPPLY CO., INC.;
DENTAL SUPPLIES AND EQUIPMENT, INC.;
EDENTALDIRECT.COM, INC.,
as successor to Crutcher Dental, Inc.,
d/b/a Larry Hyman, as Assignee for the Benefit of
Creditors of EdentalDirect.Com, Inc.;
HENDON DENTAL SUPPLY, INC.;
HENRY SCHEIN, INC., and its affiliates
including, without limitation, Zahn Dental Co., Inc.;
IOWA DENTAL SUPPLY CO.;
JAHN DENTAL SUPPLY COMPANY;
JB DENTAL SUPPLY CO., INC.;
JOHNSON & LUND CO., INC.;
KENTUCKY DENTAL SUPPLY COMPANY, INC.,
a/k/a KDSC Liquidation Corp.;
MARCUS DENTAL SUPPLY CO.;
MOHAWK DENTAL CO., INC.;
NOWAK DENTAL SUPPLIES, INC.;
PATTERSON DENTAL COMPANY,
its subsidiaries, predecessors, successors, assigns,
affiliates and related companies;
PEARSON DENTAL SUPPLIES, INC.;
ZILA, INC., as successor to Ryker Dental of Kentucky, Inc.

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. Nos. 1-99-cv-00255 and 1-01-cv-00267)
District Judge:  Honorable Sue L. Robinson

———

Argued January 27, 2010
Before:  FUENTES and FISHER, *Circuit Judges*,
and DIAMOND,[*] *District Judge*.

(Filed: April 16, 2010 )

Thomas A. Dubbs (Argued)
Richard Joffe
Labaton Sucharow
140 Broadway
New York, NY  10005
        *Counsel for Appellants*

Eric J. McCarthy
Margaret M. Zwisler (Argued)
Latham & Watkins
555 11th Street, N.W., Suite 1000
Washington, DC  20004
        *Counsel for Dentsply International, Inc.*

———

[*]Honorable Paul S. Diamond, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

3

Walter H. Drane, Jr.
Potter, Anderson & Corroon
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19801
    *Counsel for Accu Bite, Inc.,*
    *Hendon Dental Supply, Inc.,*
    *and Henry Schein, Inc.*

Dorothy A. Hickok
Paul H. Saint-Antoine (Argued)
Drinker, Biddle & Reath
18th & Cherry Streets
One Logan Square
Philadelphia, PA  19103

Darryl A. Parson
Drinker, Biddle & Reath
1100 North Market Street, Suite 1000
Wilmington, DE  19801
    *Counsel for Benco Dental Co.*

Patricia L. Enerio
Proctor Heyman
1116 West Street
Wilmington, DE  19801
    *Counsel for Burkhart Dental Supply Co.*

Henry E. Gallagher, Jr.
Connolly, Bove, Lodge & Hutz
1007 North Orange Street

P.O. Box 2207
Wilmington, DE 19899
    *Counsel for Darby Dental Laboratory*
    *Supply Co., Inc.*

Antoinette D. Hubbard
James J. Maron
Maron, Marvel, Bradley & Anderson
1201 North Market Street, Suite 900
Wilmington, DE 19801
    *Counsel for Pearson Dental Supplies, Inc.*

William J. Wade
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19899

Margaret M. Zwisler
Latham & Watkins
555 11th Street, N.W., Suite 1000
Washington, DC 20004
    *Counsel for Patterson Dental Company*

C. Scott Reese
Cooch & Taylor
824 Market Street Mall, Suite 1000
P.O. Box 1680
Wilmington, DE 19899-1680
    *Counsel for JB Dental Supply Co., Inc.*

---

OPINION OF THE COURT

---

FISHER, *Circuit Judge*.

These two antitrust cases, brought by two dental laboratories against an artificial tooth manufacturer and many of its dealers, are before us for the second time. In the first of the two cases, we must decide whether the District Court properly denied the plaintiffs' motion for summary judgment on their monopolization claim against the manufacturer as well as the Court's denial of the plaintiffs' motion for reconsideration of its summary judgment ruling and subsequent dismissal of their complaint. In the second case, we must decide whether the District Court properly dismissed the plaintiffs' conspiracy to restrain trade and conspiracy to monopolize claims against both the manufacturer and its dealers for failure to state a claim. Although for slightly different reasons than those articulated by the District Court, we agree with the District Court's conclusions and will affirm its rulings.

## I.

These appeals arise from two related antitrust cases filed in the United States District Court for the District of Delaware: *Howard Hess Dental Laboratories, Inc. v. Dentsply International, Inc.* ("*Hess*") and *Jersey Dental Laboratories v.*

6

*Dentsply International, Inc.* ("*Jersey Dental*").[1]  Because we set forth the factual background of both cases in great detail in a prior appeal, *see Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363 (3d Cir. 2005) ("*Hess I*"), we recite here only those facts required for the resolution of this appeal.

The plaintiffs in both cases are two dental laboratories (referred to in this opinion as the "Plaintiffs").  One of the defendants in both *Hess* and *Jersey Dental*, Dentsply International, Inc., manufactures artificial teeth, among other things, which it sells to the Plaintiffs and other laboratories through a network of authorized dealers (referred to in this opinion as the "Dealers"), several of which are named defendants only in *Jersey Dental*.  The Plaintiffs use Dentsply's artificial teeth to make dentures.  In both cases, the Plaintiffs essentially allege that Dentsply "foreclosed its competitors' access to [D]ealers by explicitly agreeing with some [D]ealers that they will not carry certain competing brands of teeth and by inducing other [D]ealers not to carry those competing brands of teeth" and that Dentsply, "by agreement [with] its [D]ealers, . . . set[] the [D]ealers' resale prices."  *Hess I*, 424 F.3d at 367.  In so doing, the Plaintiffs allege, Dentsply "caused [the] Plaintiffs to purchase Dentsply's teeth at artificially high prices and lose profits from unrealized sales of Dentsply's competitors' teeth."  *Id.*

---

[1]These cases were brought as putative class actions but have never been certified as such.

The Plaintiffs brought the *Hess* suit against Dentsply in 1999, alleging several antitrust conspiracies and seeking both monetary and injunctive relief. The District Court granted Dentsply's subsequent motion for summary judgment on the Plaintiffs' damages claim, concluding that the Plaintiffs lacked standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). In 2001, the Plaintiffs brought the *Jersey Dental* suit against Dentsply as well as several of its Dealers, again alleging several antitrust conspiracies and again asking for damages and injunctive relief, and the District Court again dismissed the Plaintiffs' damages claims on the basis of *Illinois Brick*. The District Court also denied the Plaintiffs' motion for leave to amend their complaint, concluding that the proposed amendment would be futile. The Plaintiffs thereafter brought an interlocutory appeal in this Court.

On appeal, we affirmed in part and reversed in part. *Hess I*, 424 F.3d 363. We held that in *Hess* the Plaintiffs could not recover damages under a coconspirator exception or a control exception to *Illinois Brick* and could not recover non-overcharge damages. In *Jersey Dental*, we held that the Plaintiffs did not have statutory standing to recover lost profits damages but that they did have statutory standing to recover damages from Dentsply for its alleged price-fixing conspiracy with its Dealers. While we adopted a "limited" general coconspirator exception to *Illinois Brick*, we found that exception inapplicable to the Plaintiffs, and thus concluded that they could not pursue damages under the coconspirator exception. *Hess I*, 424 F.3d at 383-84. In summary, we held that the Plaintiffs could not recover any damages in *Hess* and most damages in *Jersey Dental*. We concluded that the Plaintiffs did have standing

8

under the coconspirator exception for overcharge damages "caused by the alleged retail price-fixing conspiracy, although not for the alleged exclusive-dealing conspiracy." *Id.* at 384 (footnote omitted).

On remand, the Plaintiffs filed a five-count amended complaint in *Jersey Dental*. In Count One, they re-alleged their conspiracy to restrain trade claim under Section 1 of the Sherman Act. Counts Two and Three asserted conspiracies to monopolize under Section 2 of the Sherman Act against the Dealers and Dentsply, respectively. Count Two sought damages as well as injunctive and declaratory relief while Count Three sought only injunctive and declaratory relief. Counts Four and Five asserted conspiracies to restrain trade under Section 1 of the Sherman Act against the Dealers and Dentsply, respectively, again seeking both damages as well as injunctive relief as to the Dealers and only injunctive and declaratory relief as to Dentsply. Motion practice ensued. In *Jersey Dental*, the Dealers moved to dismiss Counts Two and Four of the amended complaint under Federal Rule of Civil Procedure 12(b)(6), as did Dentsply as to Counts Three and Five. In *Hess*, the Plaintiffs moved for summary judgment on their monopolization claim under Section 2 of the Sherman Act against Dentsply. The District Court denied the Plaintiffs' summary judgment motion in *Hess* and granted both the Dealers' and Dentsply's respective motions to dismiss in *Jersey Dental*, and dismissed Counts Two through Five of the amended complaint.[2] *Howard*

---

[2]The District Court also granted the motions of several of the Dealers in *Jersey Dental* to dismiss the amended complaint

*Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324 (D. Del. 2007) ("*Howard Hess I*").

The Plaintiffs in *Hess* subsequently filed what they styled as a motion to supplement the record and to amend the District Court's summary judgment ruling, asking for permission to provide the District Court with evidence to show the existence of anticompetitive injury. Meanwhile, in *Jersey Dental* the Plaintiffs moved for certification of appealability of the District Court's dismissal of their claims in the amended complaint. In ruling on the motion to amend and the motion for certification, *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, Nos. 99-255 & 01-267, 2008 U.S. Dist. LEXIS 1487 (D. Del. Jan. 8, 2008) ("*Howard Hess II*"), the District Court construed the motion to amend as one for reconsideration and denied it, finding that the Plaintiffs' proposed evidence was not relevant. The District Court granted the motion for certification and certified for appeal the dismissal of Counts Two through Five of the amended complaint in *Jersey Dental*. The District Court in *Hess* noted that "the parties, through their litigation strategies, have made it awkward procedurally to close the case for purposes of appellate review, Dentsply having failed to file either a motion to dismiss or a motion for summary judgment." *Howard Hess II*, 2008 U.S. Dist. LEXIS 1487, at *13-14. The Court therefore "order[ed] the parties to either enter a stipulation or, if they are unable to come to agreement, to both submit proposed orders to accomplish closure of *Hess*, either through

---

for lack of personal jurisdiction and improper venue. That portion of the District Court's ruling is not at issue here.

10

dismissal or through the entry of judgment." *Id.* at \*14. In response to the District Court's order, Dentsply moved for the dismissal of the *Hess* complaint. The Plaintiffs opposed that motion but, to "accommodate" an appeal as they put it, echoing the District Court's directive, submitted a proposed order dismissing the complaint with prejudice. The District Court approved that order and dismissed the complaint in *Hess*.

The Plaintiffs have filed timely notices of appeal in both cases. In *Hess*, they challenge the District Court's denial of their summary judgment motion on Count Two's monopolization claim, denial of their motion for reconsideration, and dismissal of their complaint. In *Jersey Dental*, they challenge the District Court's various grounds for dismissal of Counts Two through Five for failure to state a claim.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.

Our review of the District Court's denial of summary judgment is plenary. *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009). We apply the same test the District Court should have used. *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Md.*, 989 F.2d 635, 637 (3d Cir. 1993). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

11

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

We review a denial of a motion for reconsideration for abuse of discretion, but we review the District Court's underlying legal determinations de novo and factual determinations for clear error. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999).

Our review of the District Court's dismissal under Rule 12(b)(6) is plenary. *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, 579 F.3d 304, 307 (3d Cir. 2009). While "[a]ntitrust claims . . . are subject to the notice-pleading standard of Federal Rule of Civil Procedure 8(a)(2), . . . [s]uch claims must . . . allege facts sufficient to raise a right to relief above the speculative level." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir. 2007) (citations omitted). That is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III.

Our analysis is bifurcated. We begin with the District Court's rulings in *Hess* and turn next to its rulings in *Jersey Dental*.

12

**A.**     *Hess*

**1.     Denial of the Motion for Summary Judgment**

In *Hess*, Count Two of the Plaintiffs' complaint asserted a monopolization claim in violation of Section 2 of the Sherman Act and sought an injunction essentially to prevent Dentsply from both imposing exclusive dealing agreements on the Dealers and retaliating against those Dealers that do not submit to Dentsply's demands.

Section 2 of the Sherman Act imposes liability on "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States[.]" 15 U.S.C. § 2. A private party may pursue injunctive relief against "threatened loss or damage" stemming from a violation of Section 2. 15 U.S.C. § 26. To meet their initial summary judgment burden on their claim for injunctive relief, the Plaintiffs had to show "(1) threatened loss or injury cognizable in equity; (2) proximately resulting from the alleged antitrust violation." *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 856 (3d Cir. 1996) (citations omitted). "[T]he initial question is . . . 'whether [the Plaintiffs] ha[ve] raised a genuine issue of material fact sufficient to show a threat of antitrust injury' if [Dentsply] engage[s] in future violations of the type alleged." *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 668 (10th Cir. 2006) (quoting *R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir. 1989)). In other words, to meet their burden the Plaintiffs had to "demonstrate a significant threat of injury from an impending violation of the

13

antitrust laws or from a contemporary violation likely to continue or recur." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969) (citations omitted).

The Plaintiffs sought to meet their burden primarily by relying on the doctrine of collateral estoppel and this Court's decision in *United States v. Dentsply International, Inc.*, 399 F.3d 181 (3d Cir. 2005) ("*Dentsply*" or the "Government Case"). There the United States sued Dentsply for monopolization in violation of Section 2. This Court reversed the district court's post-trial judgment for Dentsply and remanded with instructions to grant the injunctive relief sought by the government. *Id.* at 197. We concluded that Dentsply both possessed monopoly power in the artificial tooth market and had used that power to foreclose competition. *Id.* at 196. Our conclusion was predicated primarily on Dentsply's adoption of "Dealer Criterion 6," a policy that prohibited dealers from "add[ing] further tooth lines [other than those purchased from Dentsply] to their product offering" and that was enforced against most Dealers. *Id.* at 185 (quotation marks omitted).

In their summary judgment motion in *Hess*, the Plaintiffs argued that our holding in the Government Case that Dentsply had engaged in anticompetitive practices compelled an inference of antitrust injury to the Plaintiffs. The District Court disagreed, concluding that while such an inference was certainly plausible, a determination of injury-in-fact to the Plaintiffs was not necessary to our decision in the Government Case. As a

14

consequence, the District Court found that collateral estoppel did not apply.[3]

Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted). The following four elements are required for the doctrine to apply: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Szehinskyj v. Attorney Gen. of the United States*, 432 F.3d 253, 255 (3d Cir. 2005) (citation omitted).

---

[3]Because the applicability *vel non* of collateral estoppel is a question of law, we ordinarily exercise plenary review over a district court's collateral estoppel analysis. *See Cospito v. Attorney Gen. of the United States*, 539 F.3d 166, 171 (3d Cir. 2008) (per curiam); *Delaware River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir. 2002). However, where, as here, a plaintiff seeks to collaterally estop a defendant from relitigating an issue from previous litigation in which the defendant was a party but the plaintiff was not, our review is limited to deciding whether the district court abused its discretion. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248 (3d Cir. 2006); *Smith v. Holtz*, 210 F.3d 186, 199 n.18 (3d Cir. 2000); *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995).

For interrelated reasons, we do not find that any of the first three elements required for collateral estoppel is met here. But most significantly, we do not find that the third element is satisfied. *See Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 475 (3d Cir. 1997) ("the application of collateral estoppel is inappropriate" if any one element is not met). The Restatement describes that element as follows:

> If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

Restatement (Second) of Judgments § 27 cmt. h (1982). "[I]n determining whether the issue was essential to the judgment, we must look to whether the issue was critical to the judgment or merely dicta." *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 527 (3d Cir. 2002) (internal quotation marks and citation omitted).

Applying these standards to this case, we do not find that any inference of anticompetitive injury to the Plaintiffs was essential to our determination that Dentsply had committed an

16

antitrust violation. The Plaintiffs' claim for injunctive relief hinges on whether they have established antitrust injury. To establish as much, they had to show injury "of the type the antitrust laws were designed to prevent and that flows from that which makes [Dentsply's] acts unlawful." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). In the Government Case, we had to decide, in relevant part, whether Dentsply's conduct was anticompetitive. To that end, our analysis had two focal points: first, whether Dentsply possessed monopoly power; and second, whether Dentsply used that power to edge out competition. *See Dentsply*, 399 F.3d at 186-87. Our finding that Dentsply's conduct led to price increases in the relevant market did not require us to find that anyone other than Dentsply's competitors was injured. Put another way, we did not need to conclude that any upstream purchasers, such as the Plaintiffs, were threatened with injury. Simply because such a conclusion may be gleaned from the Government Case does not mean that it was essential to our holding. *Cf. Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1183 (3d Cir. 1972) ("[P]arties should be estopped only on issues they actually deem important, and not on incidental matters."). Under these circumstances, the District Court did not abuse its "broad discretion" in concluding that Dentsply should not be precluded from defending itself against the Plaintiffs' claim for injunctive relief. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

In addition to declining to collaterally estop Dentsply, the District Court concluded that the Plaintiffs did not meet their summary judgment burden because they made no showing of

17

antitrust injury. The Court reasoned that because the Government Case injunction already prohibited Dentsply from pursuing the very conduct that gave rise to the Plaintiffs' claim, the Plaintiffs had to "demonstrate a need for further, non-duplicative measures to those already in place." *Howard Hess I*, 516 F. Supp. 2d at 335 (footnote omitted). In the District Court's view, the Plaintiffs failed to present any evidence of a threat of future injury and therefore fell short of that mark.

In *United States v. Borden Co.*, 347 U.S. 514 (1954), the Supreme Court held that a private litigant's award of an antitrust injunction against a defendant does not operate as a bar to the government's right to pursue its own injunction against the same defendant, explaining that the injunctive relief afforded private litigants "supplements government enforcement of the antitrust laws" and that private and public antitrust injunctions "were designed to be cumulative, not mutually exclusive." *Id.* at 518 (citations omitted); *see also id.* at 519 ("Different policy considerations govern each of these. They may proceed simultaneously or in disregard of each other. In short, the Government's right and duty to seek an injunction to protect the public interest exist without regard to any private suit or decree." (internal citation omitted)).

The Plaintiffs argue that the District Court "attempted to maneuver around [*Borden*] on the ground that, in *Borden*, unlike here, it was the private plaintiff rather than the Government who was first to obtain the requested relief." (Appellants' Br. 32 (record citation omitted).) In their view, under the antitrust laws "relief may be granted to private plaintiffs based on the same threat that justified a prior grant of similar injunctive relief to

18

the Government." (*Id.* at 33.) It is true that *Borden* refused to say that the existence of one type of injunction, public or private, cannot at least be taken into account by a trial judge in weighing whether a subsequent plaintiff, whether public or private, has shown the requisite antitrust injury. *See* 347 U.S. at 520. But we do not understand *Borden*, or any other antitrust authority, to require the Plaintiffs to have established a need for an injunction that was "non-duplicative," in the District Court's words, as *Borden* makes clear that private and public injunctions may exist concomitantly. *See also N.J. Wood Finishing Co. v. Minn. Mining & Mfg. Co.*, 332 F.2d 346, 350 (3d Cir. 1964).

Although the law is clear that public and private antitrust injunctions may coexist without regard for one another, nothing in *Borden* intimates that a private litigant is relieved of its evidentiary burden of showing an entitlement to injunctive relief when the government has already obtained its own injunction. We said as much in *Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573 (3d Cir. 1979). There the district court granted summary judgment for the defendants on the antitrust claims of private plaintiffs, effectively holding that the plaintiffs were not entitled to an injunction. We reversed. We disagreed with the defendants' contention that "remand [was] unnecessary because . . . it [was] evident that the plaintiffs [were] not entitled to injunctive relief." *Id.* at 594 n.85. In our view, the plaintiffs were not "necessarily foreclosed from injunctive relief by the mere pendency of the government and direct purchaser suits for similar remedies[.]" *Id.* Under *Borden*, we thought the plaintiffs' injunction claim could go forward if they were "able to establish a 'significant threat of injury' under general equity principles." *Id.* (quoting *Borden*,

19

347 U.S. at 519).  We further suggested that the district court could "consider whether any meaningful difference exists in the present case 'with respect to the parties capable of enforcing' the injunction, or whether the reality here is that 'one injunction is as effective as 100, and concomitantly, that 100 injunctions are no more effective than one[.]'"  *Id.* (quoting *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 261 (1972)).

For purposes of this appeal, two important principles emerge from *Mid-West Paper*.  First, under *Borden* a trial court faced with an injunction request may factor into its equitable analysis the effect of another injunction on the plaintiff's showing of injury.  Therefore, the District Court's consideration of the Government Case injunction in its assessment of the Plaintiffs' right to injunctive relief was not impermissible *per se*.  While the District Court likely ascribed too much weight to the Government Case injunction in assessing the Plaintiffs' right to their own injunction, the Court clearly also found that the Plaintiffs failed to meet their burden of presenting evidence to show that they were entitled to such relief.  And that brings us to *Mid-West Paper*'s second important principle:  a plaintiff bears the obligation of presenting evidence demonstrating injury even where another injunction is already in place.  There can be no doubt that the Plaintiffs left that obligation unfulfilled.  As they did before the District Court, the Plaintiffs refer us to several factors that, in their view, show why an injunction is necessary.  Significantly, however, the Plaintiffs have packaged those factors as mere arguments, not evidence.  That approach does not carry the day at summary judgment.  *Cf. Thornton v. United States*, 493 F.2d 164, 167 (3d Cir. 1974).

20

The Plaintiffs claim, for instance, that the term of the Government Case injunction – seven and one-half years – is not long enough to ensure that they will not suffer harm. They assert that Dentsply still retains monopolistic market share despite that injunction and will be able to resume its anticompetitive practices once the injunction expires because, according to them, the market for artificial teeth is relatively stagnant. But even assuming that an antitrust defendant's "ability" to engage in anticompetitive conduct were, standing alone, enough to justify injunctive relief, the Plaintiffs' prognosis of Dentsply's future conduct is unsupported by record evidence. In any event, if the Plaintiffs are threatened with antitrust injury at or near the end of the Government Case injunction's term, nothing prohibits them from petitioning a court for relief at that point. The Plaintiffs also rely on the alleged nationwide presence of 7,000 dental laboratories that are "better situated to monitor Dentsply's exclusive dealing practices[.]" (Appellants' Br. 38.) Tellingly, the Plaintiffs cite no authority for the proposition that a plaintiff may avoid its obligation of showing injury merely by claiming to be a more effective antitrust policeman than the government, and we are aware of no such authority. *Cf. Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1245 (D.C. Cir. 2004). Similarly, the Plaintiffs request that Dentsply be prohibited "from attending any meeting or phone call between any dental dealer and any dental laboratory" (Appellant's Br. 40-41), but have elected not to provide any evidence that any such meetings or phone calls are now injuring them or will soon do so. Finally, the Plaintiffs point to Dentsply's purported unrepentance regarding its past conduct as a basis for injunctive relief. They assert that "Dentsply still refuses to acknowledge the wrongful nature of its

21

conduct." (Appellants' Br. 44 (internal quotation marks omitted).) The antitrust laws, however, afford no relief on that basis alone. *Cf. Sec. & Exch. Comm'n v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980). In a nutshell, the various examples of alleged injury the Plaintiffs have brought to our attention are purely speculative and thus are insufficient to justify an award of injunctive relief. *See*, *e.g.*, *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 269 (3d Cir. 1998).

A review of their pleadings before the District Court reflects that the Plaintiffs for the most part sought to meet their summary judgment burden simply by telling the District Court what they did not need to do. Specifically, in their moving papers the Plaintiffs asserted that they did not need to prove irreparable injury; did not have to show that they had standing to sue for damages; and were not barred from obtaining injunctive relief merely because the government had already secured one against Dentsply. Importantly, following remand from this Court's prior appeal, there is no hint in the record that the Plaintiffs sought to engage in any additional discovery or made any effort to introduce any factual material for the District Court to consider. The Plaintiffs' strategy betrays a misunderstanding of the summary judgment stage of litigation. A party moving for summary judgment must clear two hurdles to meet its initial burden. It must show that (1) there are no genuine questions of material fact and (2) the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see McCarthy*, 80 F.3d at 847. By telling the District Court what they did *not* need to establish, the Plaintiffs did not leap high enough. Accordingly, we will affirm the District Court's denial

22

of the Plaintiffs' motion for summary judgment on their monopolization claim against Dentsply.

## 2. Denial of the Motion for Reconsideration

After the District Court denied their motion for summary judgment, the Plaintiffs asked the Court to amend its summary judgment ruling and for permission to supplement the record with evidence that, in their view, demonstrated the antitrust injury the District Court had found wanting. The District Court construed the motion as one for reconsideration and denied it, concluding that the evidence the Plaintiffs were seeking to introduce would be relevant only if they had shown that Dentsply's anticompetitive conduct would likely recur.[4] Because they had failed to make such a showing, the District Court reasoned, reconsideration was unwarranted.

"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café*, 176 F.3d at 677 (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or

_____

[4]Neither party contests the District Court's interpretation of the Plaintiffs' motion as one for reconsideration, and thus we accept that interpretation as correct.

23

(3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (citation omitted).

The stated aim of the Plaintiffs' motion was to submit the very evidence the District Court had found they had failed to present in their summary judgment motion. However, "new evidence," for reconsideration purposes, does not refer to evidence that a party obtains or submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available. *See De Long Corp. v. Raymond Int'l, Inc.*, 622 F.2d 1135, 1139-40 (3d Cir. 1980), *overruled on other grounds by Croker v. Boeing Co.*, 662 F.2d 975 (3d Cir. 1981) (en banc). Nothing in the record suggests that the evidence the Plaintiffs sought to present post-summary judgment was unavailable to them when they filed their summary judgment motion. Under these circumstances, the District Court did not abuse its discretion in denying the Plaintiffs' motion for reconsideration, and we therefore will not upset that ruling. *See Harsco*, 779 F.2d at 909 (district court correctly did not consider affidavit filed after summary judgment was granted because it "was available prior to the summary judgment").

### 3. Dismissal of the complaint

After denying the Plaintiffs' motion for an injunction and their motion for reconsideration, the District Court noted the procedurally "awkward" posture of the case. *Howard Hess II*, 2008 U.S. Dist. LEXIS 1487, at *14. That awkwardness, according to the District Court, stemmed from the fact that the

24

denial of the Plaintiffs' summary judgment motion effectively barred them from pursuing their claim, thus placing their suit on a dead-end road. As a consequence, the District Court directed the parties to "submit either a stipulation or competing orders in *Hess* and *Jersey Dental* in order to accommodate a consolidated appeal." *Id.* at \*16. Dentsply thereafter moved to dismiss the complaint with prejudice in light of that order. The Plaintiffs opposed Dentsply's motion but submitted their own proposed order dismissing the complaint while purporting to reserve their right to appeal any dismissal. The District Court approved that order, thereby dismissing the complaint with prejudice and denying Dentsply's motion to dismiss as moot.

We see no error in the District Court's action. Ordinarily, a district court's denial of a motion for summary judgment means only that there remain genuine questions of material fact for resolution by the fact finder. *See Kutner Buick, Inc. v. Am. Motors Corp.*, 868 F.2d 614, 619 (3d Cir. 1989). But here the District Court denied the Plaintiffs' summary judgment motion because it found that there were no genuine questions of material fact. To the extent the Plaintiffs thought that the District Court's denial of their summary judgment motion entitled them to pursue their claims any further, they were mistaken, as a plaintiff asserting antitrust claims does not get to a jury simply by filing a complaint and hoping for the best. *Cf. Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 467-69 (1992); *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 481 (3d Cir. 1992) (en banc). The District Court concluded that the Plaintiffs could not prevail on their claim for injunctive relief against Dentsply and, as we explained earlier, we agree with that conclusion. And

25

because the Plaintiffs could go no further on that claim, we likewise agree with the District Court's dismissal of their complaint. The Plaintiffs have given us no compelling reason to disturb that disposition. Accordingly, we will affirm the District Court's dismissal of the complaint in *Hess*.

### B. *Jersey Dental*

In *Jersey Dental*, the Plaintiffs alleged a conspiracy to monopolize in violation of Section 2 of the Sherman Act in Counts Two and Three of their amended complaint and a conspiracy to restrain trade in violation of Section 1 in Counts Four and Five. A Section 2 conspiracy claim has four elements: (1) an agreement to monopolize; (2) an overt act in furtherance of the conspiracy; (3) a specific intent to monopolize; and (4) a causal connection between the conspiracy and the injury alleged. *See, e.g.*, *United States v. Yellow Cab Co.*, 332 U.S. 218, 224-25 (1947); *Am. Tobacco Co. v. United States*, 328 U.S. 781, 788, 809 (1946). A plaintiff asserting a Section 1 claim also must allege four elements: "(1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal; and (4) that it was injured as a proximate result of the concerted action." *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005) (citations omitted).

The District Court dismissed all four counts on several grounds. The Court dismissed Counts Three and Five, which sought injunctive relief against Dentsply, for the same reasons it denied the Plaintiffs' summary judgment motion in *Hess*. The Court dismissed Counts Two and Four, to the extent they sought

26

damages from the Dealers, on the basis of *Illinois Brick*, concluding that the coconspirator exception of that case did not apply because Dentsply and the Dealers were not coequal participants in the conspiracy. The District Court also dismissed Counts Two and Three, against the Dealers and Dentsply, respectively, based on its determination that the Plaintiffs did not sufficiently allege the element of specific intent on the part of the Dealers. Finally, the Court found that the dismissal of Counts Two through Five was proper because of the Plaintiffs' failure to adequately allege the agreement element of the Section 1 and Section 2 claims asserted in those counts. The Plaintiffs dispute nearly all of the District Court's conclusions.[5] Given these overlapping alternative holdings, we find it most expeditious to begin with the District Court's finding as to the agreement element of Counts Two through Five, and then move on to the other portions of the District Court's ruling.[6]

---

[5]In their briefs, the Plaintiffs do not impugn the District Court's dismissal of their claims for injunctive relief against Dentsply as asserted in Counts Three and Five to the extent the Court found that the Plaintiffs lacked standing to pursue those claims given their failure to allege facts demonstrating antitrust injury. As such, the Plaintiffs have waived any contest to that portion of the District Court's ruling. *See Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 337 n.5 (3d Cir. 2009).

[6]The defendants argue that the Plaintiffs should be judicially estopped from claiming, as they do in their amended complaint, that the Dealers were Dentsply's equals in the alleged conspiracy because of the Plaintiffs' previous allegations in

27

### 1. Allegation of an agreement

The District Court found the dismissal of Counts Two through Five warranted in part based on its conclusion that the Plaintiffs did not adequately allege an agreement among Dentsply and the Dealers. The Plaintiffs seek to revive their conspiracy claims essentially by reference to their allegations that "every Dealer agreed to the same plan – Dealer Criterion 6"; that "every Dealer knew that every other Dealer agreed, or would agree, to this same plan"; and that "it . . . was obvious to

these proceedings that Dentsply coerced the Dealers into participating in its anticompetitive practices. The doctrine of judicial estoppel "bar[s] a party from taking contradictory positions during the course of litigation." *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d Cir. 2009) (citations omitted). One of the threshold requirements for judicial estoppel is a finding of bad faith on the part of the party against whom the doctrine is invoked. *Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008). The applicability *vel non* of judicial estoppel is fact-specific. *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 613 (3d Cir. 1996). Here, although Dentsply invoked the doctrine before the District Court, the District Court made no mention of it, and we ordinarily do not consider issues not addressed by the district court in the first instance. *See, e.g., In re Montgomery Ward & Co.*, 428 F.3d 154, 166 (3d Cir. 2005). We see no reason to depart from that rule here, as we cannot decide, based on this record and with no findings by the District Court, whether the Plaintiffs have exhibited bad faith. *Cf. Reliance Ins.*, 428 F.3d at 166 & n.25.

each Dealer that – only if all of the other Dealers complied – would the purpose of Dealer Criterion 6 be achieved." (Appellants' Br. 68-69.)

Section 1 claims are limited to combinations, contracts, and conspiracies, and thus always require the existence of an agreement. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 267 (3d Cir. 2009). Section 2 claims, in contrast, do not require an agreement except where, as here, the specific charge is conspiracy to monopolize. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767 n.13 (1984). Therefore, the viability of the Plaintiffs' Section 1 and Section 2 claims in Counts Two through Five turns on whether the Plaintiffs have adequately alleged an agreement among Dentsply and the Dealers. *See Englert v. City of McKeesport*, 872 F.2d 1144, 1150 (3d Cir. 1989); *Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 473-74 (3d Cir. 1985).[7] To allege such an agreement between two or more persons or entities, a plaintiff must allege facts plausibly suggesting "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Copperweld*, 467 U.S. at 771 (quotation omitted); *see also*, *e.g.*, *Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19, 29-30 (1962).

---

[7]The standard for a Section 2 violation is "the more stringent monopoly standard[,]" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481 (1992), but only insofar as the practices constituting the alleged violation are concerned, not the existence of an agreement.

The amended complaint in this case alleges a two-tiered conspiracy. First, it alleges that the defendants conspired to "maintain Dentsply's monopoly of the manufacture of artificial teeth and/or premium artificial teeth for sale in the United States, to restrain trade for the sale of artificial teeth and/or premium artificial teeth in the United States by the implementation of an exclusive dealing arrangement, and to exclude Dentsply's competitors from the markets for such teeth in the United States[.]" (App. 435.) Second, it alleges that the defendants conspired "to sell such teeth to dental laboratories at anticompetitive prices determined by Dentsply and agreed to by the Dealer Defendants." (*Id.*) To carry out this conspiracy, Dentsply allegedly has sold teeth to the Dealers on the condition "that [the Dealers] restrict their dealings with rival manufacturers[.]" (*Id.* at 452.) The Dealers, the Plaintiffs allege, "knew that this exclusive dealing arrangement was and is an illegal restraint of trade designed to maintain Dentsply's monopoly." (*Id.* at 440.)

In our review of the amended complaint, we understand the Plaintiffs to allege a hybrid of both vertical and horizontal conspiracies. (*See*, *e.g.*, *id.* at 435 ("Defendants, *each with all of the others*, have entered into two interrelated conspiracies[.]" (emphasis added).) That sort of conspiracy, sometimes dubbed a "hub-and-spoke" conspiracy, *see*, *e.g.*, *Impro Prods., Inc. v. Herrick*, 715 F.2d 1267, 1279 (8th Cir. 1983), has a long history in antitrust jurisprudence, *see*, *e.g.*, *Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939). Such a conspiracy

> involves a hub, generally the dominant purchaser or supplier in the relevant market, and the spokes,

30

made up of the distributors involved in the conspiracy. The rim of the wheel is the connecting agreements among the horizontal competitors (distributors) that form the spokes.

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435 n.3 (6th Cir. 2008); *see also* 2 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 1426, at 188 n.11 (2d ed. 2000); ABA Section of Antitrust Law, *Antitrust Law Developments* 24 (6th ed. 2007).

Here, even assuming the Plaintiffs have adequately identified the hub (Dentsply) as well as the spokes (the Dealers), we conclude that the amended complaint lacks any allegation of an agreement among the Dealers themselves. The amended complaint states only in a conclusory manner that all of the defendants – Dentsply and all the Dealers included – conspired and knew about the alleged plan to maintain Dentsply's market position. The amended complaint alleges, for instance, that "Dentsply made clear to each . . . dealer that every other Dentsply dealer was . . . required to agree to the same exclusive dealing arrangement, and that every other Dentsply dealer had so agreed." (App. 442.) Iterations of this allegation are sprinkled throughout the amended complaint. (*E.g.*, *id.* at 443, 451, 454, 456, 458-59.) But to survive dismissal it does not suffice to simply say that the defendants had knowledge; there must be factual allegations to plausibly suggest as much. *See Twombly*, 550 U.S. at 564. There are none here. In other words, the "rim" connecting the various "spokes" is missing. *Cf. Total*

31

*Benefits Planning*, 552 F.3d at 436; *Toys "R" Us, Inc. v. F.T.C.*, 221 F.3d 928, 934-36 (7th Cir. 2000).

Instead of underscoring factual allegations plausibly suggesting the existence of an agreement, the Plaintiffs invite us to infer that the Dealers were aware of each other's involvement in the conspiracy because, as market participants, they all knew that Dentsply was the dominant player in the artificial tooth market and because they all had an economic incentive to create and maintain a regime in which Dentsply reigned and the Dealers did its bidding. In that regime, the Plaintiffs tell us, the Dealers would all benefit from Dentsply's policies because they would all be able to charge dental laboratories artificially inflated prices for teeth in their various regions of operation. We do not disregard the logical appeal of this argument. Certainly, the objective of many antitrust conspiracies is to control pricing with an eye to increasing profits. But simply because each Dealer, on its own, might have been economically motivated to exert efforts to keep Dentsply's business and charge the elevated prices Dentsply imposed does not give rise to a plausible inference of an agreement among the Dealers themselves. *Cf. Twombly*, 550 U.S. at 566 (noting the "logic" of the complaint's allegation of an agreement but finding it insufficient because it did not suggest actual joint action). Notwithstanding *Twombly*'s requirement that an antitrust plaintiff state "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement[,]" *id.* at 556 (footnote omitted), the Plaintiffs' allegations do not offer even a gossamer inference of any degree of coordination among the Dealers. Those allegations are not "placed in a context that raises a suggestion of a preceding agreement" among the

32

Dealers. *Id.* at 557. Instead, they do no more than intimate "merely parallel conduct that could just as well be independent action." *Id.* As a consequence, the Plaintiffs have fallen short of their pleading obligations.[8]

Before both the District Court and us, the Plaintiffs have tried to hedge their bets. They argue that even if they have not adequately alleged an overarching conspiracy between and

_____

[8]The Plaintiffs rely on *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171 (3d Cir. 1992), where the district court directed a verdict for the defendant on a Section 1 conspiracy claim, finding insufficient evidence that the defendant distributors shared the defendant manufacturer's purpose of eliminating the plaintiff's business and rejecting Fineman's argument that "[S]ection 1 co-conspirators are held liable for their joint commitment to an unlawful purpose whether or not their motives for making that commitment are different." *Id.* at 212. We disagreed with the district court's "novel approach[,]" *id.*, and held that "although vertically aligned co-conspirators must share a commitment to a common scheme which has an anticompetitive objective, they need not share an identical motive for engaging in concerted action in violation of [S]ection 1 of the Sherman Act[,]" *id.* at 215. In addition to the fact that *Fineman* reached us in an entirely different procedural posture, nothing in that case excuses the Plaintiffs from alleging an agreement between Dentsply and the Dealers. At most, *Fineman* could provide a defense for the Plaintiffs if Dentsply argued that no agreement could exist because its motives were unaligned with the Dealers'.

33

among Dentsply and all of its Dealers, they at least have adequately alleged several bilateral, vertical conspiracies between Dentsply and the Dealers. There is arguably some support for what amounts to a "rimless" conspiracy. *See Kotteakos v. United States*, 328 U.S. 750, 755 (1946); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002). However, we need not weigh in on the alternative theory the Plaintiffs now press, for even assuming it is legally viable or even relevant here, the Plaintiffs cannot pursue it under the circumstances of this case because the amended complaint cannot be fairly understood to allege the existence of several unconnected, bilateral, vertical conspiracies between Dentsply and each Dealer. While pleading in the alternative is, of course, authorized by the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 8(a)(3); *see also Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 802 (3d Cir. 1992), we have an obligation to read allegations not in isolation but as a whole and in context, *see Chabal v. Reagan*, 822 F.2d 349, 357 (3d Cir. 1987); *Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1026 (3d Cir. 1987). As we read the amended complaint, we see no indication of the Plaintiffs' intention to allege that every single agreement between Dentsply and each Dealer had anticompetitive effects. All throughout the amended complaint are substantially similar variations on the allegation that the "Defendants have agreed, *each with all of the others*, to implement an exclusive dealing arrangement[.]" (App. 439 (emphasis added).) Indeed, the amended complaint is rife with additional references to "the conspiracy" between "[t]he Defendants, . . . *each with all of the others*[.]" (*E.g.*, *id.* at 446, 451 (emphasis added).) These allegations are just not the stuff of several mini-agreements lacking a horizontal tether. In other words, the Plaintiffs simply

34

did not draft their amended complaint to encompass their alternative legal theory. In short, the Plaintiffs are bound by the four corners of their amended complaint, which clearly seeks to allege one conspiracy to which Dentsply and all of the Dealers, as a collective, were parties. To the extent the Plaintiffs are recasting their allegations in an effort to circumvent a motion to dismiss, we must reject that approach. *See Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 907-08 (2007); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 533 F.3d 1, 5 (1st Cir. 2008).

The Plaintiffs have failed to allege any facts plausibly suggesting a unity of purpose, a common design and understanding, or a meeting of the minds between and among Dentsply and all of the Dealers. Accordingly, we will affirm the District Court's determination that the Plaintiffs have failed to adequately allege the agreement element of their Section 1 and Section 2 claims.

## 2. Allegation of Specific Intent

The District Court dismissed the conspiracy to monopolize claims asserted in Counts Two and Three on the alternative ground that the Plaintiffs failed to adequately allege specific intent on the part of the Dealers.[9] Specific intent is an

---

[9]The Plaintiffs argue that the District Court erroneously applied a heightened pleading standard by requiring them to allege not only that the Dealers knew that Dentsply would achieve a monopolistic position but, additionally, that they

35

essential element of a conspiracy to monopolize claim. *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 807 (3d Cir. 1984). It means "an intent which goes beyond the mere intent to do the act." *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985) (discussing specific intent in the attempt to monopolize context) (quoting *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 432 (2d Cir. 1945)). In other words, the defendant must have "intended to achieve an illegal monopoly." Joseph P. Bauer & William H. Page, II *Kintner's Federal Antitrust Law* § 14.40, at 423 (2002) (footnote omitted); *see also Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 626 (1953); *Am. Tobacco Co.*, 328 U.S. at 809. Specific intent in the antitrust context may be inferred

---

"wanted" Dentsply to obtain a monopoly, thereby "confus[ing] motive with intent." (Appellants' Br. 81-83.) We agree that no authority of which we are aware mandates the conclusion that a defendant's intent to violate the antitrust laws is negated if the defendant was coerced into committing a violation. It is well settled that at the summary judgment stage a court may dispose of an antitrust conspiracy claim in "the absence of any plausible motive to engage in the conduct charged[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986). We recognize that some courts have made motive-type determinations in antitrust cases at the pleading stage. *See*, *e.g.*, *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026-27 (10th Cir. 1992). Other courts, however, have disavowed that approach. *See*, *e.g.*, *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 159 (D.D.C. 2004). We need not decide here which line of cases has it right.

36

from a defendant's unlawful conduct. *See*, *e.g.*, *Advo, Inc. v. Phila. Newspapers, Inc.*, 51 F.3d 1191, 1199 (3d Cir. 1995).

Here, the Plaintiffs point us to their allegations that the defendants "have acted with the specific intent to unlawfully maintain a monopoly[,]" (App. 452); that "the intended effect of th[e] exclusive dealing arrangement . . . has been the elimination of any and all competition[,]" (*id.* at 440); and that the defendants "knew that this exclusive dealing arrangement was and is an illegal restraint of trade designed to maintain Dentsply's monopoly[,]" (*id.*). In essence, the Plaintiffs allege that Dentply's pricing policies were unlawful, that the Dealers knew as much, and that they signed on to those policies knowing full well they were unlawful. But that allegation, in its many iterations, is conclusory. There are no facts behind it, so it does not plausibly suggest knowledge of unlawfulness on the Dealers' part. We could feasibly infer the Dealers' specific intent to further Dentsply's monopolistic ambitions if the Plaintiffs had stated enough factual matter to suggest some coordination among the Dealers, something to suggest that they knew that Dentsply was spearheading an effort to squash its competitors by pressing the Dealers into its service and keeping prices artificially inflated.[10] We have already determined,

---

[10]As the Plaintiffs correctly note, the agreement element of their conspiracy claims arguably is not negated by their allegation that the Dealers may have been coerced into submitting to Dentsply's pricing policies. *See Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 142 (1968); *Albrecht v. Herald Co.*, 390 U.S. 145, 150 & n.6 (1968). But

37

however, that the Plaintiffs' allegations that the Dealers conspired with Dentsply are deficient, so we cannot infer the Dealers' specific intent from their mere participation in the conspiracy, as the Plaintiffs urge. In fact, the only actual conduct the Plaintiffs have alleged on the part of the Dealers is that each one of them, acting on its own, signed a bilateral dealing agreement with Dentsply. The only plausible inference from that conduct is that each Dealer sought to acquire, retain and/or increase its own business. Significantly, the antitrust laws do not prohibit such conduct. *See*, *e.g.*, *U.S. Steel Corp. v. Fortner Enters., Inc.*, 429 U.S. 610, 612 n.1 (1977). At bottom, the Plaintiffs' allegations of specific intent rest not on facts but on conclusory statements strung together with antitrust jargon. It is an axiom of antitrust law, however, that merely saying so does not make it so for pleading-sufficiency purposes. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" (internal quotation marks, alteration and citation omitted)).

Because we find that the Plaintiffs failed to sufficiently allege specific intent, we agree with the District Court's dismissal of Counts Two and Three on this ground.

----

that argument does not relieve the Plaintiffs of their obligation to state "sufficient factual matter . . . [that] 'state[s] a claim to relief that is plausible on its face'" as to the specific intent element of their Section 2 claims. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

38

### 3.    Application of *Illinois Brick*

In addition to finding that the Plaintiffs did not adequately allege specific intent or an agreement, the District Court dismissed Counts Two and Four under *Illinois Brick*. The Court recognized that *Hess I* did not address whether the Plaintiffs could pursue damages claims against the Dealers because the Dealers were not parties to that suit. The District Court concluded, however, that *Illinois Brick*'s general coconspirator exception did not apply here because the Plaintiffs did not allege facts to show that the Dealers were in fact coconspirators with Dentsply.

The Plaintiffs fault the District Court's consideration of any exception at all to *Illinois Brick*. In the Plaintiffs' view, *Illinois Brick* is inapposite because they buy directly, not indirectly, from the Dealers. But that circumstance is immaterial because the amended complaint does not adequately allege that the Dealers are members of a conspiracy with Dentsply. As we explained in *Hess I*, the Plaintiffs could come within *Illinois Brick*'s coconspirator exception only if the Dealers were precluded from asserting claims against Dentsply because their participation in the conspiracy was "truly complete." *Hess I*, 424 F.3d at 383. As we have already concluded, however, the amended complaint does not give rise to a plausible inference that the Dealers' involvement in the conspiracy was truly complete. Therefore, to state a viable claim against the Dealers, the Plaintiffs must come within the coconspirator exception – or some other exception – to *Illinois Brick*. Because they have failed to do so, the Plaintiffs in essence are asserting their claims against the Dealers as mere middlemen. This they cannot do.

39

*See, e.g.*, *Kansas v. UtiliCorp United Inc.*, 497 U.S. 199, 204, 207 (1990); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1044-50 (9th Cir. 2008); *McCarthy*, 80 F.3d at 855.

The Plaintiffs also argue that, even assuming the District Court's application of *Illinois Brick* was correct as to their request for overcharge damages, the Court made no finding as to their request for lost profits. In *Hess I*, we explained that "[w]hen antitrust violators cause prices to increase through monopolization, a price-fixing conspiracy, or exclusionary conduct, the harm they cause members of the distribution chain comes in two forms: (1) overcharges paid for goods actually purchased; and (2) lost profits resulting from the lost opportunity to buy and resell a greater volume of goods." 424 F.3d at 373 (footnote and citations omitted). After canvassing various sources on the subject, we held that the Plaintiffs did not have standing to recover lost profits from Dentsply. Our rationale for barring lost profits damages was based mostly on the Plaintiffs' status as indirect purchasers vis-à-vis Dentsply. *See id.* at 375. We also explained that lost profits damages are widely "disfavored" and cited approvingly from a law journal article by Judge Easterbrook in which he argued that overcharge damages, as opposed to lost profits damages, "should be the basis of all [antitrust] damages." *Id.* (quoting Frank H. Easterbrook, *Treble What?*, 55 Antitrust L.J. 95, 101 (1986)) (quotation marks omitted and alteration in original). The Plaintiffs acknowledge that portion of our holding but assert that we have "not had any occasion to rule on whether lost profits damages may be recovered from the Dealers." (Appellants' Br. 59.)

40

Although *Hess I* admittedly did not categorically bar lost profits damages in this circuit, we need not explore this issue any further in this case. In this Court, issues that are not "specifically presented to the District Court" ordinarily are waived on appeal, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 215 F.3d 407, 418-19 & n.14 (3d Cir. 2000) (collecting cases); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 262; *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005), and there is no evidence in the record that the Plaintiffs specifically litigated in the District Court whether they may recover lost profits damages from the Dealers. It is true that we have the "discretionary power to address issues that have been waived[,]" *Bagot*, 398 F.3d at 256 (citations omitted), and we sometimes exercise that power "when prompted by exceptional circumstances[,]" *Selected Risks Ins. Co. v. Bruno*, 718 F.2d 67, 69 (3d Cir. 1983) (citations omitted). But no such circumstances are attendant here. A substantial part of *Hess I* was dedicated to an analysis of whether the Plaintiffs could recoup lost profits damages from Dentsply. *See* 424 F.3d at 373-76. We concluded that they could not do so. *Id.* at 376. Despite how central both that analysis and that conclusion were to *Hess I*, the Plaintiffs did not leverage our discussion to persuade the District Court on remand to allow them to seek such damages from the Dealers, electing instead to broach this issue in the District Court in only the broadest terms.[11]

---

[11]The Plaintiffs contend that the defendants cannot complain that they were caught unawares by their request for lost profits damages. That may be so, but the doctrine of waiver does not serve as a surprise-avoidance mechanism alone. It

41

Accordingly, under these particular circumstances we are convinced that a waiver finding is appropriate. *See*, *e.g.*, *In re Stone & Webster, Inc.*, 558 F.3d 234, 241 n.8 (3d Cir. 2009).

## VI.

For the foregoing reasons, we will affirm the District Court's rulings in their entirety.

---

ensures that a particular issue is given a full airing, permitting each party to present its views and the trial court to make an initial determination. Most important for our purposes, the doctrine allows us to review both those views and that determination in arriving at our own considered judgment.