BLD-223

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1030
_____

TIMOTHY A. TURNER,
                                        Appellant

v.

MS. SCOTT; MR. GONZALEZ
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civil Action No. 1:15-cv-05942)
District Judge:  Honorable Robert B. Kugler
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 27, 2019
Before: AMBRO, KRAUSE, and PORTER, <u>Circuit</u> <u>Judges</u>
(Opinion filed: July 10, 2019)
_____

OPINION<sup>*</sup>
_____

PER CURIAM

  Pro se appellant Timothy Turner, proceeding in forma pauperis, appeals from the

_____

<sup>*</sup> This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

District Court's grant of summary judgment for defendants William Gonzalez and Donna Scott in an action he brought alleging racial discrimination in his prison employment. For the reasons that follow, we will summarily affirm the District Court's judgment.

I.

Because we write primarily for the benefit of the parties, we will recite only the facts necessary for our discussion. Turner is an African-American federal prisoner who, at the time relevant to this matter, was incarcerated at the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton").

Between October 2010 and September 2014, Turner worked in the electronics factory operated by the Federal Prison Industries program (known as UNICOR) at FCI Fairton, manufacturing cable assemblies. Turner worked as an electronics assembler and was training to become a clerk on Cable Operation No. 2. According to Turner, he was already performing the functions of a clerk, although he did not have the formal title; Turner does not dispute that, to qualify to be a clerk, he was required to have access to a software license that cost approximately $3,000. Two other inmates worked as clerks on Cable Operation No. 1 and had access to the requisite software licenses in their positions; one of the clerks, Angel Rodriguez, also assisted Cable Operation No. 2 prior to September 2014. Rodriguez is Hispanic.

By September 2014, the factory was struggling financially and was operating at a significant loss. On September 18, 2014, Turner's foreman at the time, defendant Gonzalez, requested that Turner be given access to a software license so that he could complete his training as a clerk. On September 29, 2014, Defendant Scott, the Factory

2

Manager, informed Gonzalez that because there were already two trained clerks with software license access on Cable Operation No. 1 who could assist Cable Operation No. 2 with clerk duties, she did not want to pay for an additional software license for Turner, given the serious financial difficulties the facility was facing.

Later that day, Gonzalez informed Turner that he would not be able to obtain a software license to continue with his clerk training. Scott ultimately terminated Turner's employment with UNICOR on October 9, 2014, because Turner did not return to work at the factory after September 29, 2014. Soon after, Scott permitted a foreman who is not a party to this action to reassign Rodriguez as the clerk for Cable Operation No. 2, because Cable Operation No. 1 no longer needed two clerks. Turner claims that he was "replaced" by Rodriguez.

In August 2015, Turner initiated an action in the District Court alleging Fifth Amendment equal protection claims for racial discrimination. After Turner amended his complaint, proceeding with claims against Gonzalez and Scott, the parties conducted discovery. On the parties' motions, the District Court ultimately granted summary judgment (in separate orders) for Gonzalez and Scott and denied Turner's request for partial summary judgment. The District Court also denied Turner's subsequent motions for reconsideration. Turner timely appealed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate

3

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, "all justifiable inferences are to be drawn in . . . favor" of the non-moving party. Id. at 255. However, "the non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment." Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 666 (3d Cir. 2016).

We review a district court's denial of a motion for reconsideration for abuse of discretion. See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 246 (3d Cir. 2010). We may summarily affirm a district court's decision "on any basis supported by the record" if the appeal fails to present a substantial question. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

III.

We conclude that summary judgment was properly granted for Scott and Gonzalez, because Turner cannot state a prima facie case of racial discrimination for his equal protection claims.[1] See Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir. 1997)

---

[1] We conclude that summary judgment was proper here regardless of whether a cause of action may be implied under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), in this context. See Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017).

4

(applying the familiar McDonnell Douglas burden-shifting framework to equal protection claims of racial discrimination, such that a "plaintiff must demonstrate by a preponderance of the evidence that she is within a protected class, that she applied for, was qualified for and was rejected for the position she sought and that nonmembers of the protected class were treated more favorably"); see also Abdul-Akbar v. McKelvie, 239 F.3d 307, 316-17 (3d Cir. 2001) (en banc) ("Although the Fifth Amendment contains no Equal Protection Clause, . . . . [t]he [Supreme] Court has construed the Fifth Amendment to contain an equal protection guarantee[;] . . . . Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment.") (internal citations omitted).

The undisputed evidence in the record shows that Rodriguez, the inmate who was ultimately reassigned to be a clerk for Cable Operation No. 2, was qualified for the clerk position, while Turner was not.[2] Rodriguez already had experience as a clerk and had the requisite software license assigned to him, as opposed to Turner, who was still training to be a clerk and needed a license to complete his training. Turner does not dispute that a software license was a necessary qualification for the clerk position. Turner could have remained in his existing position after the software license request was denied, but he

---

[2] Turner repeatedly but vaguely alleged in the District Court in various unsworn briefs and filings that he was already working as a clerk at the time relevant to this litigation, although he acknowledged that he did not have access to the requisite software license, which he did not dispute was a required credential to work as a clerk. Ultimately, Turner produced no evidence to support his allegation that he was already working as a clerk in September 2014, as he must to survive summary judgment. See Fed. R. Civ. P. 56(c); see also Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

chose to stop working at the factory. Under these circumstances, Gonzalez and Scott were entitled to summary judgment.

The District Court also did not abuse its discretion in denying Turner's motions for reconsideration.[3] Turner's motions were not based on a proper ground for reconsideration, such as an intervening change in law, newly discovered evidence, or "the need to correct a clear error of law or fact or to prevent manifest injustice." See Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

Accordingly, we will summarily affirm the District Court's judgment.

---

[3] To the extent that Turner challenges the District Court's denial of several discovery motions as premature because Turner failed to confer with defendants before filing his motions, or the denial of Turner's requests for appointment of counsel after weighing the relevant factors, we conclude that the District Court did not abuse its discretion in denying Turner's motions. See Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010); Tabron v. Grace, 6 F.3d 147, 157-58 (3d Cir. 1993). The District Court also properly denied Turner's motions for a default judgment where no default had been entered against any party. See Fed. R. Civ. P. 55(a)-(b); Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000). We deny Turner's motion for appointment of counsel on appeal. See Tabron, 6 F.3d at 156-58.